1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10
11
12
13
14
15

| | |
|---|---|
| FRANCIS C. PETERSON, et al., | ) |
| | ) |
| Plaintiff(s), | ) Case No. 2:11-cv-01919-LRH-NJK |
| | ) |
| vs. | ) ORDER DENYING MOTION TO |
| | ) RECUSE (Docket No. 161) |
| KEVIN MIRANDA, et al., | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

16      Pending before the Court is Plaintiffs' motion for recusal/disqualification of the undersigned

17   Magistrate Judge.  (Docket No. 161).  The Court has reviewed the materials and argument

18   submitted.  The Court finds the matter properly resolved without a hearing.  *See* Local Rule 78-2.

19   For the reasons discussed below, the motion is hereby **DENIED**.

20   **I.      BACKGROUND**[1]

21      Russell Hart was the neighbor of the undersigned and her family.  *See, e.g.*, Kelesis Aff. ¶ 8.

22   On March 7, 2008, Mr. Hart was charged with one count of misdemeanor battery.  *Id.* at ¶ 9.  On

23   April 29, 2008, Mr. Hart was also charged with two counts of misdemeanor stalking.  *Id.*  The

24   charges arose out of Mr. Hart's conduct directed at the undersigned and her family.  *See, e.g.*, *id.* at ¶

25   11.  On December 10, 2009, Mr. Hart's criminal trial began, at which the undersigned and her

26
27
28

---

[1]  The facts provided in this background section are taken from the materials submitted in
support of the motion for recusal, which the Court assumes are true for purposes of deciding the motion.

husband testified.  *See, e.g.*, *id.* at ¶ 13.  Plaintiffs point to testimony from the trial in asserting that the litigation was of a "deeply personal and emotional nature."  *See, e.g.*, *id.*  On January 12, 2010, Mr. Hart was found guilty on all counts and immediately ordered into custody for 30 days.  *Id.* at ¶ 14.

Following his conviction, on January 15, 2010, the law firm of Bailus Cook & Kelesis ("the Firm") began representing Mr. Hart.  *See id.* at ¶ 7.[2]  The Firm was successful in initially staying Mr. Hart's sentence but, on June 15, 2010, the District Court remanded Mr. Hart back into custody.  *Id.* at ¶ 15.  Mr. Kelesis states that Mr. Hart's District Court and subsequent Supreme Court appeals sought in part to discredit the testimony of the undersigned and her husband to show that they were actually the aggressors and instigators of improper conduct rather than Mr. Hart.  *Id.* at ¶ 16.  The appeals were unsuccessful and the case was concluded as of approximately June 21, 2010.  *See, e.g.*, *id.* at ¶ 24, Exh. 12.[3]  Mr. Hart died a few months thereafter.  *See* Mot. at 3 n.3.

In support of their pending motion, Plaintiffs also point to the fact that the Firm previously objected to an interview by the United States Marshals Service of Mr. Hart at the Clark County Detention Center regarding his conduct toward the undersigned and her family.  *See* Kelesis Aff. ¶¶ 17-19.[4]  In particular, the Firm believed the Marshals' interview constituted an inappropriate interrogation and George Kelesis contacted the Marshals Service seeking an investigation.  *See id.* at ¶ 19, Exh. 9 (letter dated September 17, 2010).  Mr. Kelesis states that he further believed that the Marshals' interview of Mr. Hart was "orchestrated" by the undersigned and/or performed as a favor to the undersigned.  *See id.* at ¶ 19; Mot. at 3 n.4.  Plaintiffs indicate that the Firm sent a letter to the Marshals Service, copied to United States Attorney Dan Bogden, the Department of Justice's Inspector General, and the Department of Justice's Office of Professional Responsibility's Acting Counsel, seeking investigations of the Marshals' conduct and "the involvement, if any, of then

---

[2]  The Firm did not represent Mr. Hart at trial.  *See* Kelesis Aff. ¶¶ 7, 15.

[3]  The Firm also represented Mr. Hart in civil proceedings arising out of the same facts as the criminal proceedings.  *See id.* at ¶ 7, n.2.

[4]  At the time, the undersigned was an Assistant United States Attorney.  *See id.* at ¶ 8.

1   AUSA Koppe in their action." Kelesis Aff. at ¶ 21, Exhs. 9, 10.  On or about October 13, 2010,

2   Associate General Counsel for the Marshals Service responded by letter, indicating that the

3   Marshals interviewed Mr. Hart "for the exclusive purpose of determining whether to provide

4   security to a possibly threatened federal officer." *Id.* at ¶ 22, Exh. 11.  Unsatisfied with the

5   response, Mr. Kelesis sent an additional letter to the Marshals Service concerning the interview. *See*

6   *id.* at ¶ 23.  Plaintiffs provide no evidence that a determination was made of any wrong-doing by the

7   United States Marshals Service or the undersigned, or that further investigation was deemed

8   necessary by any of the various government officials contacted.

9   The Firm filed the instant case on Plaintiffs' behalf on or about October 20, 2011, in state

10  court. *See* Docket No. 1.  The case was removed to this Court and assigned to Magistrate Judge

11  Johnston.  This case was referred to the undersigned on January 7, 2013, upon Magistrate Judge

12  Johnston's retirement. *See* Docket No. 135.  On or about February 8, 2013, Plaintiffs' counsel,

13  Marc Cook, contacted the undersigned's chambers *ex parte* questioning why the undersigned had

14  not recused herself from this case in light of the Firm's prior representation of Mr. Hart. *See* Cook

15  Aff. ¶ 6.  The Court's staff promptly returned Mr. Cook's phone call to inform him that the

16  undersigned had determined that recusal was not warranted, but that Plaintiffs could file whatever

17  motions they deemed appropriate. *See id.*

18  Having not received any such motion and having determined that recusal was not

19  warranted, the Court then proceeded with presiding over this case, including issuing an order

20  striking discovery documents filed on the docket in violation of Local Rule 26-8. *See* Docket No.

21  156 (issued on February 22, 2013).[5]  On February 26, 2013, Mr. Cook filed the Affidavit of George

22  P. Kelesis, Esq., seeking the undersigned's recusal from this case.  Docket No. 157.  That affidavit

23  included unredacted attachments containing the personal information of the undersigned and her

24  family, including dates of birth, partial social security number and home address. *See id.*, Docket

25  No. 158.  According to standard Court procedure, the undersigned struck and sealed the document

26  

27          [5]  Magistrate Judge Johnston had previously issued four orders striking discovery documents
    filed by Plaintiffs in this case in violation of Local Rule 26-8. *See* Docket No. 156 (identifying previous
28  orders issued at Docket Nos. 47, 48, 55, 56).

1    for failing to comply with Court rules.  *See* Docket No. 158 (citing Special Order Nos. 108, 109).

2    The Court instructed Plaintiffs that they "may refile a proper motion seeking that the undersigned

3    Judge recuses herself, but Plaintiffs' counsel must ensure that any such filing complies with Special

4    Order No. 108."  *Id.*

5            On March 1, 2013, Mr. Cook filed the Motion for Recusal/Disqualification of the

6    undersigned.  Docket No. 159.  Although the motion indicated that the personal information of the

7    undersigned was redacted, *see* Docket No. 159 at 7 n.9, the materials filed on the public docket still

8    contained the home address of the undersigned, *see* Docket No. 159, Kelesis Aff. at Exh. 4, p.1.

9    According to standard Court procedure, the undersigned struck and sealed the document for failing

10   to comply with Court rules.  *See* Docket No. 160.  The Court again instructed Plaintiffs that they

11   "may refile a proper motion seeking that the undersigned Judge recuses herself, but Plaintiffs'

12   counsel must ensure that any such filing complies with Special Order No. 108."  *Id.* at 2.

13           On March 6, 2013, Mr. Cook re-filed the Motion for Recusal/Disqualification with the home

14   address and other personal identifiers redacted.  *See* Docket No. 161 (hereinafter, "Motion").  It is

15   that motion that is currently before the Court.

16   **II.     STANDARDS**

17           "[I]n the absence of a legitimate reason to recuse [her]self, a judge should participate in cases

18   assigned."  *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008).  It is equally clear that

19   judges are "as bound to recuse ourselves when the law and facts require as we are to hear cases

20   when there is no reasonable factual basis for recusal."  *Id.*  Plaintiffs seek the undersigned's recusal

21   pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455.  The substantive standard for recusal under both

22   Sections is the same: "whether a reasonable person with knowledge of all the facts would conclude

23   that the judge's impartiality might reasonably be questioned."  *United States v. Hernandez*, 109 F.3d

24   1450, 1453 (9th Cir. 1997) (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)).  In

25   this context, a "reasonable person" is not "hypersensitive or unduly suspicious," but rather is a

26   "well-informed, thoughtful observer" who "understand[s] all the relevant facts" and "has examined

27   the record and the law."  *Holland*, 519 F.3d at 914 (citations omitted).

28           Ordinarily, the alleged bias must stem from an "extrajudicial source."  *Liteky v. United*

4

1    *States*, 510 U.S. 540, 554-56 (1994).  "[O]pinions formed by the judge on the basis of facts

2    introduced or events occurring in the course of the current proceedings, or of prior proceedings, do

3    not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or

4    antagonism that would make fair judgment impossible."  *Id.* at 555.

5         In addition, "in all but the most extreme circumstances, [the federal recusal statutes] require

6    a showing that the judge is (or appears to be) biased or prejudiced against a party, not counsel."

7    *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430, 1444 (9th Cir. 1995).  For bias against

8    an attorney to be imputed to a party, the Ninth Circuit has interpreted Sections 144 and 455 to

9    "require such virulent personal bias or prejudice against the attorney as to amount to a bias against

10   the party."  *United States v. Jacobs*, 855 F.2d 652, 656 n.2 (9th Cir. 1988); *see also United States v.*

11   *Burt*, 765 F.2d 1364, 1368 (9th Cir. 1985) (the "bias [must] be so virulent . . . as to result in material

12   harm to [the party's case]").

13   **III.    ANALYSIS**

14        "Although the substantive test for bias or prejudice is identical in sections 144 and 455, the

15   procedural requirements of the two sections are different."  *United States v. Sibla*, 624 F.2d 864, 867

16   (9th Cir. 1980).  As such, the Court first decides whether recusal is required under Section 455 and,

17   if not, then decides whether referral of the motion to another judge is required under Section 144.

18   *See id.* at 868.

19        **A.    Section 455**

20        The Court first analyzes the recusal motion under Section 455.  Recusal motions made

21   pursuant to that Section are self-enforcing by the judge for whom recusal is sought, so referral of the

22   motion is not required to consider the merits of the motion.  *See, e.g.*, *Sibla*, 624 F.2d at 868-69.

23   Plaintiffs argue that the undersigned is actually biased or her impartiality may reasonably be

24   questioned because (1) Plaintiffs are represented by a law firm that previously represented a party

25   convicted of stalking the undersigned and her family and (2) the law firm also sought an

26   investigation of the undersigned related to events arising out of that conviction.  Plaintiffs further

27   argue that the bias or perception of bias against their attorneys should be imputed to the Plaintiffs

28   themselves despite the fact that they were uninvolved in any way in the previous proceeding or

5

1  request for investigation.  The Court disagrees.

2      To begin with, no actual bias against Plaintiffs or the Firm exists.  Plaintiffs argue that

3  evidence of actual bias exists based on the orders entered by the Court requiring Plaintiffs' counsel

4  to comply with the rules of the Court.  *See* Mot. at 12.  As explained more fully below, those orders

5  do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible."

6  *Liteky*, 510 U.S. at 555.[6]  Accordingly, the Court turns to the perception of bias.

7      A reasonable person with knowledge of all the facts would not conclude that the

8  undersigned's impartiality might reasonably be questioned.  The primary thrust of Plaintiffs'

9  argument is that the undersigned was an adverse party to a criminal defendant represented by the

10  Firm up to approximately June, 2010.  The Compendium of Selected Ethics Opinions speaks to the

11  situation at hand, providing that "[r]ecusal is not required when a lawyer or law firm previously

12  represented an adverse party in litigation to which the judge . . . was a party, after the matter has

13  been finally closed."  Committee on Codes of Conduct, Compendium of Selected Ethics Opinions §

14  3.6-3(b).[7]  The Court agrees that this approach is sound.  In particular, as noted above, in all but the

15  most extreme cases, recusal is required based on bias against a party, not counsel.  *See, e.g.,*

16  *Yagman*, 55 F.3d at 1444.  Plaintiffs in the instant case had no involvement in the matters involving

17  Mr. Hart.  The fact that an attorney represented a party adverse to the undersigned in a proceeding

18  closed for nearly three years does not give rise to the virulent bias (or perception of virulent bias)

19  required to impute bias to a party now before the Court.  *See, e.g., Jacobs*, 855 F.2d at 656 n.2.  The

20

21

22      [6]  In addition to the objective standards outlined above, the undersigned also undertook a
subjective analysis pursuant to Section 455(b) "to determine whether [she] can be truly impartial when
trying the case."  *Holland*, 519 F.3d at 913.  This is a "highly personal" test in which a judge must

23  consider her ability to "set aside emotion and thoughtfully examine [her] ability to impartially

24  'administer justice without respect to persons.'"  *Id.* (quoting 28 U.S.C. § 453).  The undersigned has
undertaken this analysis and finds that she is capable of examining this matter impartially.

25

26      [7]  "The Compendium of Selected Ethics Opinions provides guidance to judges on ethical
questions."  *See, e.g., Sain v. Snyder*, 2009 WL 1329520, *2 (D.N.M. April 6, 2009).  The Compendium

27  is available only to federal judges and citation is being provided herein should this issue require analysis
by a reviewing court.  *See, e.g., Turner v. AIG Domestic Claims, Inc.*, 823 F. Supp. 2d 899, 901 n.2 (D.

28  Neb. 2011).

1  Court discerns no reasonable appearance of bias based on the Firm's previous representation of Mr.

2  Hart.[8]

3       Plaintiffs also argue that recusal is required because the Firm previously requested an

4  investigation of the Marshals' interview of Mr. Hart and the perceived involvement of the

5  undersigned in that interview.[9]  The mere filing of an ethical complaint against a judge is not

6  grounds for her recusal.  *See, e.g.*, *In re Evergreen Security, Ltd.*, 570 F.3d 1257, 1265 (11th Cir.

7  2009); *see also Studley*, 783 F.2d at 939-40 (judge is not disqualified by a litigant's suit or

8  threatened suit).  That is especially true where, as here, the ethical complaint was resolved several

9  years ago.  *See Kampfer v. Gokey*, 955 F. Supp. 167, 169-70 (N.D.N.Y. 1997), *aff'd* 175 F.3d 1008

10  (2nd Cir. 1999) (plaintiffs' earlier filing of judicial complaint against presiding judge was not

___

14   [8]  The attorney primarily handling Mr. Hart's appeal was Dayvid Figler.  *See* Kelesis Aff. at
15  Exhs. 7, 8 (appellant's opening brief and writ of mandamus, signed by Mr. Figler).  Although in no way
dispositive, the Court takes judicial notice of the fact that it appears from the "attorney search" on the
16  Nevada Bar website that Mr. Figler is no longer employed by the Firm.  *See, e.g.*, *Bosom v. Remax
17  Props., LLC*, 2010 WL 2133907, *1 n.1 (D. Nev. May 25, 2010) (taking judicial notice of attorney
records on the State Bar of Nevada website).

19   [9]  Plaintiffs exaggerate the evidence before the Court in asserting that the Firm sought
20  "independent investigations by government agencies . . . questioning Magistrate [Judge] Koppe's
authority to possibly have orchestrated the interrogation [and] her ethical duties as a legal officer for the
21  U.S. government."  *See* Mot. at 11.  The letters at issue focus on the conduct of the Marshals Service.
While the letter to Marshal Hoye questions whether the interview was "an unofficial interrogation
22  performed as a favor to an Assistant U.S. Attorney" and was copied to the United States Attorney, it
sought a "review of the actions of your staff" at the Marshals Service.  *See* Kelesis Aff. Exh. 9 at 1.
23  That letter did not seek an investigation of the undersigned, nor disciplinary or any other action against
24  the undersigned.  *See id.*  Similarly, the letters to the Department of Justice's Inspector General and the
Department of Justice's Office of Professional Responsibility's Acting Counsel (also copied to the
25  United States Attorney) seek a "review of the conduct of two United States Marshals."  *See id.* at Exh.
26  10.

27       Nonetheless, the Court assumes for purposes of this motion that the Firm sought an ethics
investigation directly against the undersigned herself, questioning, *inter alia*, a perceived breach of "her
28  ethical duties as a legal officer for the U.S. government."

grounds for recusal).[10]   Moreover, the request for an investigation was not made by a party in this case, but rather by counsel stemming from an unrelated matter involving an unrelated party.  This further militates against Plaintiffs' argument that the undersigned's impartiality might reasonably be questioned.  *See, e.g., Jacobs*, 855 F.2d at 656, n.2.

Plaintiffs lastly assert that the orders entered in this case by the undersigned would cause a reasonable person to question her impartiality.  Plaintiffs note that the Court struck discovery documents improperly filed on the docket, as well as recusal requests filed with unredacted personal identifying information of the undersigned.[11]   Plaintiffs fail to explain how these orders evidence a deep-seated favoritism or antagonism that would make fair judgment impossible.  *See Liteky*, 410 U.S. at 555.  "A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune."  *Id.* at 556.  The Court's issuance of orders requiring counsel to comply with the rules of the Court would not cause a reasonable person to question her impartiality.

The undersigned has no personal bias against the Firm or Plaintiffs.  The Firm's previous representation of Mr. Hart and its requests for an investigation into activities by the Marshals Service that it now suspects were orchestrated by the undersigned have had absolutely no effect on

---

[10]   On October 13, 2010, the Associate General Counsel for the Marshals Service indicated that the Marshals' interview was an appropriate means of determining whether to provide security to a possibly threatened federal officer.  *See* Kelesis Aff. Exh. 11.  Although Mr. Kelesis indicates he was not satisfied with this response and sent a follow-up letter, *see id.* at ¶ 23, there is no indication in the record that any of the government entities copied on his letter believed an investigation or further response was required.  Accordingly, it appears the Firm's request for an investigation has been closed since late 2010.

[11]   Notably, Plaintiffs do not argue that these orders were erroneous.  As noted above, Magistrate Judge Johnston had four times previously stricken improperly filed discovery documents in this case.  With respect to the requests for recusal, Plaintiffs claim that some of the unredacted personal information was located on exhibits that were publicly filed in state court.  *See, e.g.*, Mot. at 1 n.1. However, Plaintiffs do not cite to any provision of the governing special orders indicating that the home address of a judge may be filed on the public docket because it was obtained by counsel through some other publicly available means.  The Court notes that the redaction requirements apply to "all documents filed with the court" and the special orders outline no exception based on the source of the information filed .  *See* Special Order No. 108.

the outcome of this matter or the undersigned's ability to preside in this matter impartially.  Nor do the arguments raised by Plaintiffs, taken together, give rise to a reasonable person having reasonable questions about the undersigned's impartiality.

### B.    Section 144

Plaintiffs also seek the undersigned's recusal pursuant to 28 U.S.C. § 144.  As a threshold matter, the Court notes that it is not entirely clear that Section 144 applies to magistrate judges.  While the text of Section 455 explicitly refers to magistrate judges, the text of Section 144 does not.  *Compare* 28 U.S.C. § 455(a) (providing basis for recusal of, *inter alia*, any "magistrate judge") *with* 28 U.S.C. § 144 (allowing parties "in a district court" to request recusal of "the judge before whom the matter is pending").  One of the purposes of enacting Section 455(b)(1) was to duplicate the recusal grounds provided in Section 144 to make them "applicable to *all* justices, judges, and magistrates (and not just district judges)."  *Liteky*, 510 U.S. at 548 (emphasis in original).  It remains an unsettled question whether Section 144 applies solely to district judges and not to magistrate judges.  *See, e.g.*, *Cohea v. Pliler*, 2007 WL 2028578, *1 (E.D. Cal. July 10, 2007) (discussing Ninth Circuit authority).  Although the law is unclear as to the applicability of Section 144 to magistrate judges, the Court assumes for purposes of the pending motion that it does apply.

Unlike Section 455, Section 144 requires the referral of a motion for recusal to another judge once a determination is made of the legal sufficiency of the factual assertions raised.  *See* 28 U.S.C. § 144.  It is for the undersigned to evaluate the legal sufficiency of the recusal motion in the first instance.  *See, e.g.*, *Studley*, 783 F.2d at 940; *Hussein v. Univ. & Community College Sys. of Nevada*, 2010 WL 3385298, *1 (D. Nev. Aug. 24, 2010).  This inquiry turns on the facial sufficiency of the affidavit.  *See, e.g.*, *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978).  Where the party seeking recusal fails to include facts that on their face warrant recusal, referral of the motion is unnecessary.  *See, e.g., United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999) (recusal request based on judge's prior service as an Assistant United States Attorney and actions taken by judge during proceeding were legally insufficient, making referral unnecessary).

In this case, referral of the Section 144 motion is unnecessary because the affidavit is legally insufficient.  As outlined above, Plaintiffs' request for recusal turns on (1) their counsel's previous

representation of a party adverse to the undersigned; (2) their counsel's previous ethical complaint against the undersigned; and (3) the issuance of orders in this matter.  These grounds are not legally sufficient on their face to warrant recusal.  *See, supra*, Section III.A.

**IV.     CONCLUSION**

        For the reasons stated above, the Court hereby DENIES Plaintiffs' motion for the undersigned to recuse from this case pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455.

        IT IS SO ORDERED.

        DATED: April 11, 2013

                                                    _____
                                                    NANCY J. KOPPE
                                                    United States Magistrate Judge