1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                            DISTRICT OF NEVADA

8                                   * * *

9   LINDA PETERSON; et. al,                )
                                           )
10              Plaintiffs,                )        2:11-cv-01919-LRH-RJJ
                                           )
11   v.                                    )
                                           )        ORDER
12   KEVIN MIRANDA; et. al,                )
                                           )
13              Defendants.                )
    _____   )

14

15          Before the court is defendants the Clark County School District ("CCSD"), Filiberto Arroyo

16   ("Arroyo"), Brian Nebeker ("Nebeker"), Loren Johnson ("Johnson"), and Armando Quintanilla's

17   ("Quintanilla") (collectively "moving defendants") motion for summary judgment. Doc. #202.[1]

18   Plaintiffs Linda and Francis Peterson ("the Petersons") filed an opposition (Doc. #217) to which

19   moving defendants replied (Doc. #228).

20   **I.      Facts and Procedural History**

21          This action arises from the tragic death of the Petersons' daughter, Angela Peterson.

22          On November 28, 2009, non-party Rebecca Wamsley ("Wamsley"), a dispatcher for the

23   CCSD Police Department ("department"), hosted a holiday party at her home and invited members

24   of the department and their family. Wamsley created fliers for the party on department computers

25

26   _____

          [1]Refers to the court's docket entry number.

1    during working hours, posted the fliers around the department, and e-mailed the flier through the

2    department e-mail system.

3           Defendant Tina Zuniga ("Zuniga") attended the holiday party with her daughter and her

4    daughter's eighteen (18) year old boyfriend, defendant Kevin Miranda ("Miranda"). Despite being

5    underage, Miranda drank alcohol provided at the party. Miranda then left the party intoxicated, ran a

6    red light, and crashed his parents' truck into the vehicle driven by Angela Peterson, killing her.

7    Miranda subsequently pled guilty to a category B felony, and is currently serving an eighty (80)

8    month sentence.

9           On October 20, 2011, the Petersons filed a complaint for wrongful death against all

10   defendants. Doc. #1, Exhibit 1. On June 5, 2013, the Petersons filed a second amended complaint

11   against defendants alleging thirteen causes of action: (1) negligence against all defendants;

12   (2) negligence against Eric Miranda and Chary Alvarado Miranda ("Miranda's parents");

13   (3) violation of NRS § 41.440 against Miranda's parents; (4) violation of NRS § 41.1305 against

14   defendants Zuniga, Cynthia Ruelas, Mark W. Robbins, and Roberto Morales; (5) constitutional

15   violations under 42 U.S.C. § 1983 against CCSD and all CCSD employee defendants;

16   (6) intentional infliction of emotional distress against all defendants; (7) negligent infliction of

17   emotional distress against all defendants; (8) negligent hiring, retention, and supervision against

18   CCSD; (9) ratification against CCSD; (10) respondent superior against CCSD; (11) punitive

19   damages against CCSD and all CCSD employee defendants; (12) punitive damages against

20   Miranda; and (13) civil conspiracy against CCSD and all CCSD employee defendants. *See*

21   Doc. #172. Thereafter, moving defendants filed the present motion for summary judgment.

22   Doc. #202.

23   **II.    Legal Standard**

24          Summary judgment is appropriate only when "the pleadings, depositions, answers to

25   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

26   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.    Discussion**

Moving defendants seek summary judgment on the Petersons' fifth cause of action for constitutional violations under § 1983; sixth cause of action for intentional infliction of emotional distress; seventh cause of action for negligent infliction of emotional distress; eighth cause of action for negligent hiring, retention, and supervision; ninth cause of action for ratification; tenth cause of action for respondent superior; eleventh cause of action for punitive damages; and thirteenth cause

1    of action for civil conspiracy. *See* Doc. #202. The court shall address each cause of action below.

2    **A. Constitutional Violation Under § 1983**

3    In their second amended complaint, the Petersons allege three separate claims under § 1983:

4    (1) constitutional violations relating to conduct at the holiday party; (2) constitutional violations

5    relating to a cover-up after the holiday party; and (3) a denial of access to the courts claim. *See*

6    Doc. #172. Additionally, the Petersons have alleged a municipal liability claim against defendant

7    CCSD pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Moving

8    defendants seek judgment on all four claims.

9    **1. Holiday Party**

10   Section 1983 provides a remedy to individuals whose constitutional rights have been

11   violated by a person acting under color of state law. *See Burke v. County of Alemeda*, 586 F.3d 725

12   (9th Cir. 2009). In order for an individual to bring a successful Title 42 U.S.C. § 1983 claim, the

13   plaintiff must show that the challenged conduct (1) was committed by a person acting under color of

14   state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by the

15   Constitution or laws of the United States. *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962).

16   To establish that a person was "acting under the color of law," a plaintiff must show that:

17   (1) defendant's conduct was performed while acting, purporting to act, or pretending to act in the

18   performance of official duties; (2) defendant's conduct must have had the purpose and effect of

19   influencing the behavior of others; and (3) the challenged conduct must have been related in some

20   meaningful way either to defendant's governmental status or to the performance of his duties.

21   *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006).

22   In their complaint, the Petersons allege that the off-duty CCSD employees attending

23   Wamsley's holiday party were acting under color of state law when they failed to stop an underage

24   attendee of the party, who ultimately killed their daughter, from drinking. *See* Doc. #172.

25   Generally, a private, non-sponsored party held by a state employee does not immediately

26   transform into a state-sponsored event if other state employees are invited and present. Rather, there

4

1    must be some additional evidence of conduct by the off-duty CCSD employees attending the party

2    that would constitute the performance of official duties. *See Anderson*, 451 F.3d at 1068. Here, it is

3    undisputed that neither defendant Arroyo nor defendant Johnson attended the holiday party. Thus,

4    they cannot have engaged in any conduct at the party that would constitute an action under color of

5    law. Accordingly, the court shall enter judgment in favor of both defendants as it relates to activities

6    that occurred during Wamsley's holiday party.

7         Similarly, although moving defendant Quintanilla attended the holiday party, there is no

8    evidence that he engaged in any conduct that could possibly be construed to constitute the

9    performance of an official duty. Quintanilla is the police dispatch supervisor for the department. His

10   duties include the supervision of other police dispatchers employed by CCSD. The Petersons'

11   allegations that Quintanilla saw Miranda and other minors consume alcohol, while disputed by the

12   parties, has no relationship to Quintanilla's position or job duties. Thus, his conduct in failing to

13   prevent minors from drinking is not an act under color of state law. Therefore, the court shall also

14   enter judgment in favor of defendant Quintanilla.

15        As to defendant Nebeker, however, the court finds that he is not entitled to summary

16   judgment. Nebeker, a police sergeant with the department, attended the party and allegedly saw

17   Miranda and other minors drinking, but failed to act or attempt to stop the underage drinking.

18   Although Nebeker contends that he had no duty to prevent minors from drinking at the holiday

19   party, the Petersons have proffered sufficient evidence to raise a disputed issue of material fact that

20   CCSD police officers have an obligation arising from their employment, even while off-duty, to

21   respond to criminal activity - including, and especially, underage drinking. In particular, CCSD

22   Superintendent Dwight Jones testified in his deposition that it was his expectation as part of their

23   employment that CCSD police officers respond to and prevent crimes like underage drinking.

24   *See* Doc. #217, Exhibit 23, Jones Depo., p.42:6-10. Therefore, the court finds that there are disputed

25   issues of material fact related to the duties and employment obligations of off-duty CCSD police

26   officers which precludes granting moving defendant Nebeker summary judgment on this claim.

1                    **2.  Post Holiday Party Cover-up**

2          In their complaint, the Petersons also allege that after the death of Angela Peterson,

3 defendants engaged in a cover-up of CCSD employees' activities at the party that destroyed

4 evidence irreparably weakening their legal claims. *See* Doc. #172.

5          The court has reviewed the documents and pleadings on file in this matter and finds that

6 there are disputed issues of material fact relating to moving defendants' conduct in the alleged

7 cover-up that precludes summary judgment. Viewing the evidence in the light most favorable to the

8 Petersons, moving defendants engaged in official conduct that destroyed evidence about employee

9 attendance and conduct at the holiday party that ultimately led to Angela Peterson's death. For

10 example, moving defendants Quintanilla and Nebeker ordered all CCSD dispatchers to not discuss

11 the holiday party or the death of Angela Peterson with anyone, particularly other CCSD department

12 employees. Further, moving defendant Johnson, an internal affairs officer with the department,

13 decided to not conduct an investigation into allegations that employees had violated both CCSD

14 policies and Nevada law. Instead, Johnson had long lunches with individual attendees of the party

15 and advised them not to discuss the party in any manner and with any other person. Similarly,

16 moving defendant Arroyo, the chief of the department, declined to initiate a formal investigation

17 into his employees' conduct and ordered the destruction of all holiday party fliers including the

18 erasure of all holiday party e-mails from the department e-mail system despite CCSD policies

19 requiring the preservation of e-mails for thirty (30) days. Based on these disputed issues of material

20 fact, which relate directly to moving defendants' official activities after the holiday party, the court

21 finds that summary judgment is inappropriate.

22                    **3.  Access to Courts Claim**

23          The Petersons' third and final claim under Section 1983 is a denial of access to the courts

24 claim arising from moving defendants' destruction of evidence and failure to conduct an internal

25 investigation. *See* Doc. #172.

26 ///

It has long been held that the right of access to the courts is a fundamental right protected by the Constitution. *See Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907). As part of this right, a claim for denial of meaningful access to the court exists where a defendant engages in conduct which effectively covers-up evidence and renders any state court remedies ineffective. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997). However, to state a claim for denial of access to the court, a "plaintiff cannot merely guess that a state court remedy will be ineffective." *Id*. at 1264. Rather, a plaintiff "must demonstrate that the defendants' cover-up violated [his] right of access to the courts by rendering any available state court remedy ineffective." *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998).

Here, the court finds that the Petersons have failed to state a claim for denial of access to the courts because they have failed to establish that their other claims and remedies are, or will be, ineffective as they have pending wrongful death claims against Miranda, Miranda's parents, and those individuals who allegedly gave alcohol to Miranda at the holiday party. Where a claim for wrongful death remains pending, a plaintiff cannot, as a matter of law, state a claim for denial of access to the courts based on a defendant's alleged cover-up after an incident. *See Delew*, 143 F.3d at 1223. Therefore, the court shall dismiss this claim without prejudice.

### 4. Monell Liability

In order to establish municipal liability under § 1983, a plaintiff must show: (1) an employee violated the plaintiff's constitutional rights pursuant to an official policy or informal practice of the municipal entity; (2) that the violator had final policy-making authority, and thus the challenged action itself constituted an act of official governmental policy; or (3) a person with final policy-making authority ratified the unconstitutional behavior. *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). The United States Supreme Court has expressly held that a municipality is not liable merely because it employs a tortfeasor. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978).

///

1    In their complaint, the Petersons allege that CCSD and its employees violated their

2    constitutional rights by instituting, allowing, and acquiescing to policies and behavior that failed to

3    prevent and proximately led to the death of Angela Peterson. *See* Doc. #172. As addressed above,

4    the court has already found that the Petersons have sufficiently established several claims under

5    Section 1983. Because these underlying claims necessarily involve conduct by employees who

6    allegedly had final policy-making authority, the court finds that the Petersons have established a

7    claim for *Monell* liability against CCSD sufficient to survive summary judgment. Accordingly, the

8    court shall deny moving defendants' motion as to this issue.

9    **B.  Intentional Infliction of Emotional Distress**

10   To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

11   (1) extreme or outrageous conduct by defendant; and (2) that plaintiff suffered severe emotional

12   distress. *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Extreme and

13   outrageous conduct is that which is "outside all possible bounds of decency" and is intolerable in

14   civil life. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 25 (Nev. 1998).

15   The court has reviewed the documents and pleadings on file in this matter and finds that

16   there are disputed issues of fact relating to moving defendants' conduct that preclude summary

17   judgment. As identified above, the Petersons have proffered evidence that moving defendants

18   caused the destruction of evidence and failed to conduct an investigation into CCSD employees'

19   conduct at the holiday party despite allegations that those employees violated both CCSD policies

20   and Nevada law. Further, viewing the evidence in the light most favorable to the Petersons, these

21   actions were taken in conscious disregard for Angela Peterson's life. Thus, the Petersons have

22   proffered sufficient evidence of extreme and outrageous conduct by moving defendants to survive

23   summary judgment. Therefore, the court shall deny moving defendants' motion as to this claim.

24   **C.  Negligent Infliction of Emotional Distress**

25   A plaintiff can recover for negligent infliction of emotional distress if he (1) is a bystander

26   closely related to the victim of an accident, (2) is located near the scene of the accident, and

1  (3) suffers a shock resulting from direct emotional impact stemming from the sensory and

2  contemporaneous observance of the accident. *See Crippens v. Sav On Drug Stores*, 961 P.2d 761,

3  762 (Nev. 1998).

4       In their motion, moving defendants contend that the Petersons were not bystanders to the

5  accident which killed their daughter, Angela Peterson, and therefore, they fail to establish a claim

6  for negligent infliction of emotional distress. *See* Doc. #202. However, in Nevada, a direct victim of

7  a defendant's negligent acts can recover for negligent infliction of emotional distress. *Shoen v.*

8  *Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) ("If a bystander can recover for the negligent infliction

9  of emotional distress, it is only logical that the direct victim be permitted the same recovery. . . We

10 recognize that the negligent infliction of emotional distress can be an element of the damage

11 sustained by the negligent acts committed directly against the victim-plaintiff."). Thus, as direct

12 victims of defendants' alleged negligence, the Petersons have standing to pursue a claim for

13 negligent infliction of emotional distress.

14      **D.  Negligent Hiring, Retention, and Supervision**

15      To succeed on a claim for negligent hiring, retention, and supervision of employees, a

16 plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant

17 breached that duty by hiring, retaining, and/or supervising an employee even though defendant

18 knew, or should have known, of the employee's dangerous propensities; (3) the breach was the

19 cause of plaintiff's injuries; and (4) damages. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

20      CCSD argues that it is entitled to discretionary act immunity pursuant to NRS § 41.032(2).

21 *See* Doc. #202. NRS § 41.032(2) provides complete immunity from claims based on a political

22 subdivision's exercise or performance of a discretionary function or duty. However, in Nevada,

23 discretionary immunity does not extend beyond the hiring of an employee to that employee's

24 retention and supervision. *Doe v. Estes*, 926 F. Supp. 979 (D. Nev. 1996) ("The defendant school

25 district apparently misapprehends the scope of the statutory immunity afforded its discretionary

26 functions. Here, the discretionary function was the hiring of [the employee]. The school district was

not obligated to hire him; it could have hired anyone, or no one. But having made the decision to hire [the employee], the school district assumed the obligation to use due care to ensure that [his] employment would not pose an unreasonable threat to the safety of the children in his care. This is the type of operation function of government not exempt from liability if due care has not been exercised and an injury results."). Therefore, CCSD is only entitled to discretionary immunity on allegations related to the hiring of the CCSD defendant employees.

**E.  Ratification**

A principal may become liable for the tortious acts of its agent, if the principal, with full knowledge of the tortious conduct, ratifies that conduct, and if the conduct was "purportedly done on the principal's behalf." *Harrah v. Specialty Shops*, 221 P.2d 398, 399 (Nev. 1950).

Here, there is no evidence from which it can reasonably be inferred that any conduct at the Wamsley party was undertaken on behalf of CCSD. However, the Petersons have established that moving CCSD defendants, acting with the purpose of protecting CCSD from liability, covered up the actions of CCSD employees and attempted to prevent discovery of employee conduct at the holiday party. These actions were allegedly taken on CCSD's behalf in order to protect CCSD and its employees from possible liability. Accordingly, the court shall deny moving defendants' motion as to this claim.

**F.  Respondeat Superior**

An employer may be held vicariously liable for the tortious conduct of its employees when the employees' conduct was in furtherance of their employment or within the scope of their employment. *Wood v. Safeway. Inc.*, 121 P.3d 1026, 1036 (Nev. 2005).

In its motion for summary judgment, CCSD argues that it cannot be vicariously liable for its employees' conduct because the alleged conduct occurred when the employees were not in the course and scope of their employment. However, as addressed previously, there are disputed issues of material fact relating to whether off-duty CCSD police officers who attended the holiday party had a duty to stop the underage drinking. If they had such a duty, then those same employees'

failure to prevent underage drinking at the holiday party was conduct within the scope of their employment. Further, there is sufficient evidence that supervisory employees of the department engaged in conduct after the holiday party as part of their supervisory duties that covered up the activities of other employees who attended the party. Therefore, the court shall deny moving defendants' motion as to this issue.

## G. Punitive Damages

In their complaint, the Petersons seek punitive damages against defendant CCSD and against all CCSD employee defendants. *See* Doc. #172.

As to defendant CCSD, the Petersons may not obtain punitive damages as a matter of law. Pursuant to NRS § 41.035, an award for damages against a political subdivision of the state of Nevada, like CCSD, may not include an award of punitive damages. NRS § 41.035(1). Therefore, the court shall dismiss the Petersons' punitive damages claim against CCSD.

As to the individual defendants, however, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." NRS § 42.005. As there are disputed issues of fact concerning the individual defendants' actions and conduct, the court shall not foreclose the possibility of punitive damages at this time.

## H. Conspiracy

The final cause of action in the Petersons' complaint is for civil conspiracy. To establish a claim for civil conspiracy, a plaintiff must establish: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Further, the plaintiff must establish with particular specificity "the manner in which a defendant joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984).

In their motion for summary judgment, moving defendants argue that the Petersons lack standing to assert a claim for civil conspiracy. Article III standing requires a plaintiff to show: (1) an injury in fact; (2) that is fairly traceable to the challenged conduct; and (3) has some likelihood of

1   redressability. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 (1992). Moving defendants

2   argue that the Petersons have no standing to allege a conspiracy in this action because their only

3   injury, the failure of CCSD to investigate its employees, is not an individualized and concrete injury

4   specific to them.

5           However, in their complaint, the Petersons allege more than just CCSD's failure to

6   investigate. The Petersons also allege that CCSD employees conspired to cover-up the actions of

7   department employees who attended the holiday party where underage defendant Miranda drank

8   alcohol, drove while intoxicated, and ultimately killed Angela Peterson. This cover-up was initiated

9   at the direction of defendant Arroyo, the department's chief, and carried out by other supervisory

10  employees of the department, including moving defendants Johnson, Quintanilla, and Nebeker.

11  Further, the Petersons allege that the goal of the conspiracy was to hide employee attendance and

12  conduct at the holiday party to protect CCSD and its employees from liability. Based on these

13  allegations, the court finds that the Petersons have alleged a concrete injury. Therefore, the

14  Petersons have standing to bring the underlying conspiracy claim. Accordingly, the court shall deny

15  moving defendants' motion as to this claim.

16          IT IS THEREFORE ORDERED that moving defendants' motion for summary judgment

17  (Doc. #202) is GRANTED in-part and DENIED in-part in accordance with this order.

18          IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of

19  defendants Filiberto Arroyo, Loren Johnson, and Armando Quintanilla and against plaintiffs Linda

20  and Francis Peterson on plaintiffs' fifth cause of action for constitutional violations under

21  42 U.S. § 1983 as it relates to conduct that occurred during the holiday party.

22          IT IS FURTHER ORDERED that plaintiffs' fifth cause of action for constitutional

23  violations under 42 U.S. § 1983 for a denial of access to the courts is DISMISSED without

24  prejudice.

25          IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of

26  defendant Clark County School District and against plaintiffs Linda and Francis Peterson on

plaintiffs' eighth cause of action for negligent hiring, retention, and supervision as it relates to the negligent hiring of its employees, but not to retention and supervision of those same employees.

IT IS FURTHER ORDERED that defendant Clark County School District is DISMISSED as a defendant on the plaintiffs' claim for punitive damages.

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file excess pages (Doc. #216) is GRANTED *nunc pro tunc*.

IT IS SO ORDERED.

DATED this 9th day of January, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE