MARK E. FERRARIO
Nevada Bar No. 1625
ferrariom@gtlaw.com
KARA B. HENDRICKS
Nevada Bar No. 7743
hendricksk@gtlaw.com
MOOREA L. KATZ
Nevada Bar No. 12007
katzmo@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Fax: (702) 792-9002
***Counsel for Defendants***
***Clark County School District, Filiberto Arroyo,***
***Brian Nebeker, Loren Johnson, and***
***Armando Quintanilla***

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FRANCIS C. PETERSON, individually, and LINDA PETERSON, individually, and FRANCIS C. PETERSON and LINDA PETERSON on behalf of ANGELA PETERSON, deceased,

Plaintiffs,

vs.

KEVIN MIRANDA, individually, et al.;

Defendants.

AND ANY AND ALL RELATED MATTERS.

Case No. 2:11-cv-01919-LRH-PAL

**CCSD DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 10, 2014 ORDER (DOC. # 254)**

The Clark County School District[1] ("CCSD"), Filiberto Arroyo, Brian Nebeker, Loren Johnson, and Armando Quintanilla (collectively the "CCSD Defendants") by and through the undersigned counsel, hereby move the Court to reconsider the Court's January 10, 2014 Order (Doc. # 254). This Motion is based on the following Memorandum of Points and Authorities,

///

[1] Plaintiffs have erroneously identified the Clark County School District Police as a Defendant in this matter. The Clark County School Police Services Division is not a separate legal entity and/or political subdivision.

Federal Rules of Civil Procedure 59 & 60, and any oral argument permitted by the Court and the hearing of this matter.

DATED this 31st day of January, 2014.

GREENBERG TRAURIG, LLP

BY: *_/s/ Kara B. Hendricks_*

MARK E. FERRARIO
Nevada Bar No. 1625
KARA B. HENDRICKS
Nevada Bar No. 7743
MOOREA L. KATZ
Nevada Bar No. 12007
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
***Counsel for Defendants***
***Clark County School District, Filiberto Arroyo, Brian Nebeker, Loren Johnson, and Armando Quintanilla***

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... 1

A. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

B. LEGAL ARGUMENT .......... 3

**I.** The January Order Erred by Allowing Plaintiffs' §1983 Claim to Stand Based on an Alleged Post-Accident Cover-up Despite Dismissing Plaintiffs' Denial of Access to the Courts Claim. .......... 4

a. Other Than the Right to Access the Courts, No Other Constitutional Right Is Implicated by the Allegations of a Post-Accident Cover-up. .......... 4

b. Conclusions in the January Order Implicate the CCSD Defendants' Qualified Immunity and Dismissal of Plaintiffs' § 1983 Claims Against them Is Required. .......... 5

**II.** The January Order Erred in Ruling That Nebeker Could Have Been Acting Under Color Of Law at the Wamsley Party Because There Is No Evidence He Attended the Wamsley Party While On-Duty and No Evidence He Asserted a Badge of His Authority at the Party or Acted in an Affirmative Manner. .......... 7

**III.** The January Order Erred in Concluding CCSD Defendants Could Be Liable in Tort for Conduct at the Wamsley Party Because the Public Duty Doctrine Prevents Any Tort Liability Based on Failure to Enforce the Law. .......... 10

**IV.** The January Order Erred in Allowing Plaintiffs' *Monell* Claim to Survive Summary Judgment Based on "Allegations" of Final-Policy Maker Involvement Where No Constitutional Injury Was Alleged and No Evidence of Final-Policy Maker Action Was Submitted. .......... 12

**V.** The January Order Erred in Allowing Plaintiffs' Conspiracy Claim to Stand Even Though No Concrete and Particularized Injury Was Identified, and No Underlying Tortious Behavior Was Shown. .......... 14

a. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Cover-up Could Not Have Caused the Death of Plaintiffs' Daughter. .......... 15

b. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Court Has Already Determined that the Alleged Cover-Up Did Not Deny Plaintiffs Access to the Courts. .......... 15

c. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Alleged Cover-up Did Not Cause Plaintiffs to Rely on Misrepresentations to their Detriment. .......... 16

d. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because Emotional Distress Cannot Serve as the Concrete and Particularized Injury. .......... 16

**VI.** The January Order's Conclusions on Plaintiffs' Claims for NIED, IIED, Respondeat Superior, Ratification, Negligent Training and Supervision, and Punitive Damages Are Inconsistent with Mandatory Nevada Precedent. ........................18

a. NIED ........................18

b. IIED ........................19

c. Respondeat Superior ........................19

d. Ratification ........................20

e. Negligent Hiring and Training ........................21

f. Punitive Damages ........................22

**VII.** The January Order Erred by Applying the Motion to Dismiss Standard to CCSD's Motion for Summary Judgment and by Replying on Inadmissible Evidence. ........................23

a. Factual Error: The Evidence Does Not Support the Conclusion that Nebeker attended the holiday party. ........................23

b. Factual Error: The Evidence Does Not Support the Conclusion that Nebeker saw Miranda and other minors drinking. ........................24

c. Factual Error: The Evidence Does Not Support the Conclusion that Quintanilla and Nebeker ordered all CCSD dispatcher not to discuss the holiday party. ........................25

d. Factual Error: The Evidence Does Not Support the Conclusion that Johnson had long lunches with individual party attendees and advised them not to discuss the party. ........................26

e. Factual Error: The Evidence Does Not Support the Conclusion that Arroyo ordered the destruction of holiday party fliers or erased party emails from the department email system. ........................28

f. Factual Error: The Evidence Does Not Support the Conclusion that defendants caused the destruction of evidence. ........................28

g. Factual Error: The Evidence Does Not Support the Conclusion that CCSD Defendants covered up the actions of CCSD employees and attempted to prevent the discovery of employee conduct at the party. ........................29

h. Factual Error: The Evidence Does Not Support the Conclusion that supervisory employees engaged in conduct after the part that covered up the activities of other employees. ........................29

C. CONCLUSION ........................30

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) .......... 8

*Anderson v. v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 205 (1986) .......... 12

*Anheuser-Busch, Inc. v. Natural Beverage Distrib.*,
69 F.3d 337 (9th Cir. 1995) .......... 23

*Belch v. Las Vegas Metropolitan Police Dep't*,
2011 Wl 1070175, * (D. Nev. Mar. 21, 2011) (finding discretionary act immunity to apply to negligent training and supervision claims as a matter of law "[b]ecause the Nevada Supreme Court has adopted the federal case law on discretionary act immunity in applying Nev. Rev. Stat. § 41.032.") .......... 22

*Berkovitz by Berkovitz v. U.S.*,
486 U.S. 531, 108 S. Ct. 1954 (1988) .......... 22

*Brosseau v. Haugen*,
543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) .......... 5, 6, 10

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .......... 3

*Collins v. City of San Diego*,
841 F.2d 337 (9th Cir. 1988) .......... 13

*DeMarco v. W. Hills Montessori*,
350 Fed. App'x 592 (2d Cir. 2009) .......... 26

*Doe v. Estes*,
926 F. Supp. 979 (D. Nev. 1996) .......... 21, 22

*Edberg v. Desert Palace, Inc.*,
2011 WL 1157301 (D. Nev. 2011) .......... 18

*Fields v. Shelton Fertilizer Co., Inc.*,
798 F.2d 1414 (6th Cir. 1986) .......... 21

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990) .......... 8

*Gillette v. Delmore*,
979 F.2d 1342 (9th Cir. 1992) .......... 13

*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S. Ct. 2727 (1982) .......... 5

*Harrell v. Cook*,
169 F.3d 428 (7th Cir. 1999) .......... 6

*Huffman v. County of Los Angeles*,
147 F.3d 1054 (9th Cir. 1998) .......... 7, 8, 9

*Jarvis v. City of Mesquite Police Dep't*,
2012 WL 600804 (D. Nev. Feb. 23, 2012) .......... 18, 22

*Koiro v. Las Vegas Metropolitan Police Dep't*,
2013 WL 236898 (D. Nev. Jan. 22, 2013) .......... 22

*Lauren v. Nellis*,
2011 WL 5598313 (D. Nev. 2011) .......... 13

*Linda R.S. v. Richard D.*,
410 U.S. 614, 93 S. Ct. 1146 (1973) .......... 16

*Lynch v. Barrett*,
703 F.3d 1153 (2012) .......... 5, 6

*Marconnie Wireless Tel. Co. v. United States*,
320 U.S. 1 (1943) .......... 3

*Mark v. Borough of Hatboro*,
51 F.3d 1137 (3d Cir. 1995) .......... 8

*McDade v. West*,
223 F.3d 1135 (9th Cir. 2000) .......... 5, 8

*Myers-Desco v. Lowe's HIW, Inc.*,
2012 WL 1376759 (D. Nev. 2012) .......... 18

*O'Brien v. City of Tacoma*,
247 Fed. Appx. 58 (9th Cir. 2007) .......... 6, 11, 16, 18

*Orr v. Bank of Am.*,
285 F.3d 764 (9th Cir. 2002) .......... 6, 26

*Saucier v. Katz*,
533 U.S. 194, 121 S. Ct. 2151 (2001), *overruled in part on other grounds by Pearson*, 555 U.S., 129 S. Ct. 808 .......... 5

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

*Sch. Dist. Co. IJ, Multnomah Cnty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) .......... 3

*Screws v. United States*,
325 U.S. 91, 65 S. Ct. 1031 (1945) .......... 7

*Thornhill Publishing Co., Inc. v. General Telephone & Elecs. Corp.*,
594 F.2d 730 (9th Cir. 1979) .......... 23

*Tia v. Criminal Investigation Demanded as Set Forth*,
441 Fed. Appx. 457 (9th Cir. 2011) .......... 16

*Van Ort v. Estate of Stanewich*,
92 F.3d at 836 .......... 7, 8

*Villagomes v. Laboratory Corp. of America*,
783 F.Supp.2d 1121 (D. Nev. 2011) .......... 18

*Wilson v. Layne*,
526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) .......... 5

*Zinkand v. Brown*,
478 F.3d 634 (4th Cir. 2007) .......... 3

**State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal.4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994) .......... 14

*Bruttomesso v. Las Vegas Metropolitan Police Dep't*,
95 Nev. 151 (1979) .......... 10, 11, 20

*Eikelberger v. Tolotti*,
96 Nev. 525, 611 P.2d 1086 (1980) .......... 14, 16, 17

*Jackson v. Clements*,
194 Cal. Rptr. 553 (Cal. Ct. App. 1983) .......... 11

*Lee v. GNLV Corp.*,
117 Nev. 291, 22 P.3d 209 (2001) .......... 20

*Martinez v. Maruszczak*,
123 Nev. 422, 168 P.3d 720 (2007) .......... 22

*Shoen v. Amerco, Inc.*,
896 P.2d 469 (Nev. 1995) .......... 18

*Sparks v. Alpha Tau Omega Fraternity, Inc.*,
255 P.3d 238, 127 Nev. Adv. Op. 23 (2011) .......... 21

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

*Timber Tech Engineered Bldg. Products v. The Home Ins. Co.*, 118 Nev. 630, 55 P.3d 952 (2002) ........ 16

*Torres v. Salty Sea Days, Inc.*, 36 Wash. App. 668 (1984) ........ 11, 20

*Univ. of Nev. School of Medicine v. Eighth Judicial Dist. Ct.*, 2012 WL 5288007, Case No. 61058 (Nev. Oct. 23, 2012) ........ 22

**State Statutes**

Black's Law ........ 23

NRS 41.035 ........ 22

NRS 41.035(1) ........ 22

NRS 41.0336 ........ 10, 20

**Rules**

Fed. R. Civ. P. 56 ........ 12, 23

Fed. R. Civ. P. 59(e) & 60(b) ........ 3

Federal Rules of Civil Procedure 59 & 60 ........ 1

Rule 602 of the Federal Rules of Evidence ........ 24

Rules 602 and 701 of the Federal Rules of Evidence ........ 25, 27

Rule 801 of the Federal Rules of Evidence ........ 26

Rule 59(e) ........ 3

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. INTRODUCTION AND SUMMARY OF ARGUMENT**

The CCSD Defendants respectfully request the Court reconsider the Court's January 10, 2014 Order ("January Order") in this emotionally-charged case due to clear errors of law and reliance on inadmissible evidence. The CCSD Defendants do not want to minimize the impact the tragic accident that took Angela Peterson's life had on Plaintiffs. However, the January Order made incorrect conclusions of law that have far-reaching implications and would extend both section 1983 and tort liability well-past existing boundaries.

Although the extensive briefing might suggest otherwise, the facts of this case are remarkably simple: A woman had a holiday party at her home on a Saturday night, minors got into the alcohol she provided for her guests, one of the minors drove after leaving the party and crashed into the car of Plaintiffs' daughter, taking her life. Plaintiffs seek to recover against a number of sources, the eighteen year-old that recklessly drove while intoxicated, his parents. Additionally, Plaintiffs seek to recover against individuals that attended the holiday party based on a failure to intervene, and against those individuals' employer even though it is undisputed that none of the individuals were on-duty during the party. No existing legal doctrine provides for such recovery. A mere failure to act can *never* be the basis for liability unless the failure to act breached a particular duty owed to the plaintiff. The January Order erred by finding Plaintiffs were owed duties that do not exist.

The January Order held that party attendees who were not law enforcement personnel could not be liable to Plaintiffs for failing to prevent minors from drinking at the holiday party; they owed Plaintiffs no duty. By contrast, the Court concluded that a ***factual*** issue exists as to whether law enforcement officers alleged to have attended the party owed Plaintiffs a duty to prevent minors from drinking even though it is undisputed that they were off-duty at the private event. The Court's conclusion in this regard goes against well-settled Supreme Court, Ninth Circuit and Nevada law, and if allowed to stand, would have enormous implications.

Under the Court's January Order, liability could extend to a police department where an off-

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

duty police officer fails to stop a speeding driver, and the speeding driver later causes injury. Such liability does exist even where the officer is on-duty—law enforcement simply do not owe individuals any duty to prevent them from harm by third parties. Similarly, under the Court's January Order, liability could extend to a fire department if its fire fighters failed to put out a fire, regardless of whether they were on duty when the failure occurred. The January Order, if allowed to stand, would expose police departments, fire departments, public services, and their personnel, to crippling liabilities that would threaten their existence. The January Order must be reconsidered.

Furthermore, the January Order ignored undisputed material facts when reaching its conclusions and made improper inferences as a result thereof. Notably, it is undisputed that the horrible accident that took Angela Peterson's life occurred within the jurisdiction of the Las Vegas Metropolitan Police Department ("Metro").[2] It is undisputed that Metro was the law enforcement agency that investigated the cause and circumstances of the fatal accident, **not** the CCSD police department.[3] It is also undisputed that CCSD provided Metro with names and contact information for several CCSD employees that were known to have attended the Wamsley Party shortly after the accident and that Metro interviewed three of those employees within weeks of the Wamsley Party.[4] Furthermore, it is undisputed that the CCSD employees that were interviewed by Metro shortly after the accident provided Metro information regarding additional CCSD employees that attended the Wamsley Party and that at least eight additional CCSD employees were interviewed by Metro regarding the Wamsley Party and allegations of a cover-up.[5] Thus any conclusion by the Court that there was a cover-up is clear error. CCSD's cooperation with Metro and Metro's investigation of the accident were not acknowledged in the January Order and directly impact the claims against the CCSD Defendants. This also necessitates reconsideration of the January Order.

The following clear errors of law warrant reconsideration and an amended order:

I. The January Order erred by allowing Plaintiffs' § 1983 claim to stand based on an alleged post-accident cover-up despite dismissing Plaintiffs' denial of access to

---

[2] *See* Clark County School District Defendants' Reply in Support of Motion for Summary Judgment (Doc. # 228) ("Reply") at 3, facts # 5 and 6.
[3] *See* Reply at 3, fact #7.
[4] *See* Reply at 4 facts #8 and 9.
[5] *See* Reply at 4, facts #9 and 10.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

courts claim. The Court's conclusions in this regard implicate the CCSD Defendants' qualified immunity.

II. The January Order erred in ruling that Nebeker could have been acting under color of law at the Wamsley Party because there is no evidence he attended the Wamsley Party while on-duty and no evidence that he asserted a badge of his authority at the party or acted in an affirmative manner.

III. The January Order erred in allowing Plaintiffs' *Monell* claim to survive summary judgment based on "allegations" of final-policy-maker involvement where no constitutional injury was alleged and no evidence of final-policy maker involvement was submitted.

IV. The January Order erred in concluding the CCSD Defendants could be liable in tort for conduct at the Wamsley Party where Nevada's public duty doctrine prevents any tort liability based on an alleged failure to enforce the law.

V. The January Order erred in allowing Plaintiffs' conspiracy claim to stand even though no concrete and particularized injury was identified and no underlying tortious behavior was shown.

VI. The January Order's conclusions on Plaintiffs' claims for IIED, NIED, negligent training and supervision, ratification, respondeat superior and punitive damages are inconsistent with mandatory Nevada precedent.

VII. The January Order erred by applying the motion to dismiss standard to the CCSD Defendants' motion for summary judgment and by relying on inadmissible evidence.

## B. LEGAL ARGUMENT

Reconsideration of the January Order is warranted. Courts "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as the Court has jurisdiction over the case. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001); *see also Marconnie Wireless Tel. Co. v. United States*, 320 U.S. 1, 47 (1943); Fed. R. Civ. P. 59(e) & 60(b). Reconsideration is appropriate where a court's previous ruling contains clear errors of law. *See Sch. Dist. Co. IJ, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "Rule 59(e), in essence, gives the district court a change to correct its own mistake if it believes one has been made." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). Here, the Court should exercise its discretion and correct the errors contained in the January Order.

///

///

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

**I. The January Order Erred by Allowing Plaintiffs' §1983 Claim to Stand Based on an Alleged Post-Accident Cover-up Despite Dismissing Plaintiffs' Denial of Access to the Courts Claim.**

The January Order contains an irreconcilable inconsistency in that it concludes Plaintiffs have failed to state a claim for denial of access to the courts, but allows Plaintiffs' §1983 claim based on the alleged post-accident cover-up to withstand summary judgment. See January Order at 6-7. This inconsistency could be resolved only if there was some other constitutional or federal right, other than access to the courts, that was implicated by the allegations of a cover-up to conceal "evidence about employee attendance and conduct at the holiday party." See January Order at 6. However, Plaintiffs have not identified any other constitutionally protected right allegedly violated by the post-accident cover-up and none exists. Even assuming some other right existed, the CCSD Defendants would be entitled to qualified immunity because the right is not so clearly established to alert the CCSD Defendants that their alleged conduct violated the unspecified right.

***a. Other Than the Right to Access the Courts, No Other Constitutional Right Is Implicated by the Allegations of a Post-Accident Cover-up.***

Denial of access to the Courts is the only constitutional right even remotely implicated by the alleged *post-accident* cover-up, and the Court correctly dismissed that claim pursuant to mandatory Ninth Circuit precedent.[6] The January Order committed clear error by allowing Plaintiffs' § 1983 to stand because injury to a constitutional or federally-protected right is an essential element of a § 1983 claim and without a claim that they were denied access to the courts, Plaintiffs cannot establish a constitutional injury.

Plaintiffs failed to identify any other constitutional right implicated by an alleged cover-up[7] and case law addressing qualified immunity issues surrounding denial of access claims do not discuss involvement of any related-constitutional right. To the extent that another constitutional right was violated, the right and its parameters are not "clearly established" and the CCSD Defendants are therefore afforded qualified immunity.

---

[6] See January Order at 7 ("[T]he court finds that the Petersons have failed to state a claim of denial of access to the courts because they have failed to establish that their other claims and remedies, are, or will be, ineffective as they have pending wrongful death claims against Miranda, Miranda's parents, and those individuals who allegedly gave alcohol to Miranda at the holiday party.") (citing *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998)).

[7] Neither Plaintiffs' Second Amended Complaint ("SAC") nor Plaintiffs' briefing identifies a specific constitutional violation.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

***b. Conclusions in the January Order Implicate the CCSD Defendants' Qualified Immunity and Dismissal of Plaintiffs' § 1983 Claims Against them Is Required.***

"[G]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). "The test for qualified immunity is (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful." *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000) (citations omitted).

"[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The inquiry essential to finding a right "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 202, 129 S. Ct. 808. The analysis must evaluate the specific context of the situation confronted by the official. *Saucier*, 533 U.S. at, 202, 121 S. Ct. 2151.[8]

The Tenth Circuit recently held that denial of access to courts via a "conspiracy of silence" among law enforcement personnel does not violate "a clearly-established right" such that the law enforcement officers would be stripped of their qualified immunity. In *Lynch v. Barrett*, the court Circuit reversed the lower court's denial of qualified immunity to police officers who were alleged, and for purposes of appellate review, *assumed*, to have intentionally concealed evidence of police misconduct and interfered with the plaintiffs' ability to seek redress for excessive police force in court. 703 F.3d 1153, 1156, 1158 (2012). The court held that even assuming a police "conspiracy of silence" existed and denied the plaintiff access to the courts, such officer conduct does not violate "clearly-established" constitutional rights because "a reasonable officer would have had difficulty in

[8] *See also Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) ("It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.").

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

determining how the law concerning the right to court access applied to the facts of [the] case." *Lynch*, 703 F.3d at 1161.[9] In dismissing the officer defendants from suit on qualified immunity grounds, the Tenth Circuit concluded: "[T]hat we are 'morally outraged' . . . by the alleged conduct . . . does not mean necessarily that the office[ers] should have realized that it violated a constitutional right of access.'" *Lynch*, 703 F.3d at 1162-63 (quoting *Foster*, 28 F.3d at 430).

Here, the test for qualified immunity cannot get past the first step in the analysis because Plaintiffs never identified a specific constitutionally or federally-protected right that was violated by the alleged post-accident cover-up and the Court found Plaintiffs had failed to state a claim for a denial of access to the courts.[10] Where plaintiffs cannot show that they were denied access to the courts they cannot simply resort to bringing a claim for a violation of an unarticulated and amorphous constitutional right. Moreover, as other courts have held, there is no clearly established constitutional right violated when police officers engage in a conspiracy of silence, even where such a conspiracy *actually denies the plaintiff access to courts*. *See, e.g., Lynch v. Barrett*, 703 F.3d 1153, 1156, 1158 (2012). Accordingly, even assuming the truth of Plaintiffs' allegations[11] that the CCSD Defendants ordered employees to not discuss the Wamsley Party, ordered flyers for the party sent over departmental email to be deleted, and did not conduct an IA investigation into employees alleged to have been at the Wamsley Party,[12] reasonable law enforcement officials would not understand these actions would violate Plaintiffs rights. Notably, it is undisputed that these same officers knew that the death of Angela Peterson was being investigated by Metro.[13] Additionally,

---

[9] The court further reasoned that because "the Supreme Court has never defined the right of court access to include a backwards looking claim based on a 'conspiracy of silence' aimed at interfering with an individual's ability to procure evidence of official misconduct," the right is not so "clearly-established" as to deprive the defendant police officers of their qualified immunity. *Id.* (citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 429-31 (5th Cir. 1994) (characterizing the right of access as encompassing only the right to file suit and not the right to proceed free of discovery abuses or even an evidentiary cover-up); *Wilson v. Meeks*, 52 F.3d 1547 (10th Cir. 1995) (rejecting right to access claim based on, among other things, allegations that a police official "ordered a 'code of silence' concerning a shooting)); *see also Harrell v. Cook*, 169 F.3d 428, 431-33 (7th Cir. 1999) (finding qualified immunity for officers alleged to have intentionally concealed evidence in violation of plaintiff's access to courts).

[10] The analysis gets past the first step "[i]f and only if, the court finds a violation of a constitutional right." *O'Brien v. City of Tacoma*, 247 Fed. Appx. 58 (9th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774 (2007)).

[11] However, at this stage of the proceedings, it is no longer appropriate to take Plaintiffs' allegations as true. Instead, the Court is required to determine whether admissible evidence supports Plaintiffs' claims. *See Orr v. Bank of Am.* 285 F.3d 764 (9th Cir. 2002).

[12] See January Order at 6.

[13] Reply at 4, facts # 7-9.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

the CCSD defendants are not alleged to have made any affirmative misrepresentations to anyone, including Metro, regarding the incident. The CCSD Defendants are entitled to qualified immunity as to any claims involving the alleged post-accident cover-up as such actions do not violate a "clearly-established" constitutional right. The Court should reconsider its January Order and grant summary judgment to the CCSD Defendants on Plaintiffs' § 1983 claim because the allegations of a post-accident cover-up are not a constitutional violation.

### II. The January Order Erred in Ruling That Nebeker Could Have Been Acting Under Color Of Law at the Wamsley Party Because There Is No Evidence He Attended the Wamsley Party While On-Duty and No Evidence He Asserted a Badge of His Authority at the Party or Acted in an Affirmative Manner.

The January Order erred in denying summary judgment to Nebeker on Plaintiffs' § 1983 claim because the Ninth Circuit has repeatedly held that law enforcement officers do not act under color of law if they are off-duty at the time of an incident and do not purport or pretend to act under the badge of their authority.[14] Passively witnessing a crime is simply not the requisite assertion of authority to be deemed an act "under color of law" and the Court erred in concluding that an issue of fact exists as to whether Nebeker was acting under color of law at the Wamsley Party.

Here, the Court appears to rely on the opinion of Dwight Jones to suggest there is a factual dispute regarding officer "expectations." See January Order at 5.[15] However, Mr. Jones's "expectations" are separate and distinct from the legal analysis required to determine if an officer was acting under "color of law." The only way Nebeker could be liable under § 1983 is if Plaintiffs established that Nebeker was acting "under color of law" at the Wamsley Party.

The Supreme Court has interpreted the phrase "under color of law" to mean "under pretense of law." *Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031 (1945). For an officer's actions to occur "under color of law," they "***must be performed while the officer is acting, purporting, or***

---

[14] *See Van Ort*, 92 F.3d 831, 838 (9th Cir. 1996); *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998).

[15] Specifically, while addressing Plaintiffs' § 1983 claim relating to conduct that occurred at the Wamsley Party, the Court reasoned that "CCSD Superintendent Dwight Jones testified in his deposition that it was his expectation as part of their employment that CCSD police officers respond to and prevent crimes like underage drinking" and that, "[t]herefore, the court finds that there are disputed issues of material fact related to the duties and employment obligations of off-duty CCSD police offices which precludes granting moving defendant Nebeker summary judgment on this [§ 1983] claim." January Order at 5.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

***pretending to act in the performance of his or her official duties.***" *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (emphasis added) (citations omitted). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)(quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). That is because "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *See McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

Even if an off-duty police officer has a duty to prevent underage drinking, failure to abide by such a duty is not "acting under color of law" because the failure does not involve the officer "acting, purporting, or pretending to act in the performance of his or her official duties," nor does it involve him asserting an indicia of his authority. *See Huffman v. County of Los Angeles*, 147 F.3d 1054 (9th Cir. 1998). A failure to act can never be "acting under color of law" unless the officer enjoyed a special relationship with the plaintiff, or created a danger in some *affirmative* way.[16]

In *Van Ort v. Estate of Stanewich*, the Ninth Circuit held that an off-duty police officer who forcibly entered and robbed a residence that he had previously searched while on-duty was not acting under color of law for purposes of § 1983 liability because he did not affirmatively identify himself as a police officer at the time of the robbery and was not carrying out any official duties when he forcibly entered the home. 92 F.3d 831.[17] Because the officer did not hold himself out as a police officer at the time of the robbery and the robbery was in no way related to his official duties, the Ninth Circuit concluded that as a matter of law, the officer could not have been acting under color of law at the time of the robbery. 92 F.3d at 838.[18]

Similarly, in *Huffman v. County of Los Angeles*, the Ninth Circuit held that an off-duty

---

[16] *See Van Ort v. Estate of Stanewich* 92 F.3d at 836 (citing *DeShaney v. Winnebago Cnty. Dept. of Soc. Sevs.*, 489 U.S. 189, 196, 109 S. Ct.998, 1003(1989)).

[17] The court came to this conclusion even though the plaintiffs recognized the defendant as a police officer when he forcibly entered their home. 92 F.3d at 834, 839.

[18] *See also Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties."); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150-51 (3d Cir. 1995) (member of volunteer fire company not acting under color of state law when, acting as an arsonist, he set fires so that he could later put them out).

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

deputy sheriff who was carrying a gun loaded with sheriff department-issued ammunition and his official identification was not acting under color of law when he used the gun to shoot another patron during a barroom brawl. 147 F.3d 1054 (9th Cir. 1998). The court concluded that the deputy was not acting under color of law despite the fact that the gun he fired was loaded with the ammunition issued by the sheriff's department because the deputy was neither on duty at the time of the shooting, nor wearing his uniform. *Id.* at 1058. The court reasoned that although the sheriff's department had a written policy requiring off-duty officers to "identify themselves as police officers before taking any action," because the deputy did not follow the policy and never identified himself as a sheriffs' deputy on the evening of the shooting, he was not acting under color of law when he fatally shot a patron of a bar. *Id.*

Even assuming that Nebeker did attend the Wamsley Party, the only admissible evidence in this regard is from Penny Higgins, who stated that Nebeker left the party early, and walked by a room where minors were drinking as he existed.[19] No allegations suggest that Nebeker was ever even in close proximity to minors driving under the influence. Even taking these disputed facts as true, no evidence whatsoever supports that Nebeker either (1) attended the Wamsley Party while on duty, (2) "purported or pretended" to act under color of law at the Wamsley Party by asserting his legal authority or indicia of his position, or (3) acted in any *affirmative* way.

Critically, the Ninth Circuit's analysis in *Hoffman* forecloses the possibility that Nebeker could have been acting under color of law at the Wamsley Party, even if an issue of fact exists as to whether "as part of their employment that CCSD police officers respond to and prevent crimes like underage drinking." See January Order at 5. That is because in *Hoffman*, a sheriff's deputy was required, pursuant to written department policy, to identify himself as a police officer before taking action, even when off-duty to be acting under color of law. Here, as with the officer in *Hoffman*, Nebeker neither wore his uniform nor identified himself as a police officer at the Wamsley Party (if he attended the Wamsley Party at all), and "expectations" as to his conduct are irrelevant to the

[19] The only admissible evidence Plaintiffs proffer to support their allegation that Nebeker attended the Wamsley Party was the deposition testimony of Penny Higgins, who testified that she saw Nebeker at the Wamsley Party and that he left the party early. Nebeker denies being at the Wamsley Party. See Section VII(1)-(2), *infra*.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

color of law inquiry, just as the sheriff's department polices could not support § 1983 liability in *Hoffman*. Furthermore, there is far less reason to find an "act under color of law" here than in *Hoffman*, where the only "act" alleged of Nebeker is a passive failure to intervene.

Lastly, Nebeker is entitled to qualified immunity even if he could be considered to have acted under color of law because a reasonable officer would not understand that failing to stop minors from consuming alcohol at a private party, while off-duty, would infringe upon the constitutional rights of unknown persons not at the party.[20] Given Nevada's well-settled public duty doctrine, even assuming Nebeker could have been acting under color of law at the Wamsley Party, his conduct did not so obviously violate the clearly-established rights of Plaintiffs such that Nebeker would be stripped of his qualified immunity. *See id.* Accordingly, the Court should reconsider the legal conclusions contained in the January Order and grant summary judgment to Nebeker on Plaintiffs' § 1983 claim for conduct that allegedly occurred at the Wamsley Party, where no evidence supports that he acted under color of law at the private, Saturday-night event.

## III. The January Order Erred in Concluding CCSD Defendants Could Be Liable in Tort for Conduct at the Wamsley Party Because the Public Duty Doctrine Prevents Any Tort Liability Based on Failure to Enforce the Law.

The January Order also erred by not dismissing Plaintiffs' state-law claims against the CCSD Defendants to the extent that they are based on conduct that occurred at the Wamsley Party. Even if the Court takes Plaintiffs' allegations as true and holds that an issue of fact exists as to whether Nebeker attended the Wamsley Party, neither Nebeker nor any of the CCSD Defendants can be liable for the alleged failure to prevent minors from consuming alcohol under Nevada's well-settled public duty doctrine.

"[A]part from the statutory prohibition [contained in NRS 41.0336], it is generally true that government is not liable for failing to prevent the unlawful acts of others." *Bruttomesso v. Las Vegas Metropolitan Police Dep't*, 95 Nev. 151, 153 (1979). Nevada's public duty doctrine generally prevents tort recovery for a failure to enforce the law because the government's duty runs

[20] *See Brosseau*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004) (emphasizing need to analyze specific context of situation when determining whether an officer would understand his conduct to violate the plaintiff's clearly established constitutional rights).

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

to the public at large and not particular plaintiffs. *Bruttomesso*, 591 P.2d 254. As a leading secondary source on the public duty doctrine explains:

> [I]t appears to be the majority view, under the above-defined public duty doctrine, that liability for a police officer's non-action in restraining a drunk driver may be imposed ***only*** where there are circumstances creating a special relationship with the injured party, that is, facts which establish a clear and unequivocal duty to act to prevent imminent harm to an identifiable person . . . Thus, whether the officer merely observed and failed to apprehend a drunk driver, or conversed with the driver long enough to determine his state, or actually ordered an intoxicated person to operate a motor vehicle, the courts so far have failed to find special circumstances sufficient to establish liability for police failure to restrain a drunk driver who subsequently injures another person.

James L. Isham, Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government Unit or Officer, 48 A.L.R.4th 320 at § 2(a) (emphasis added).[21]

The exceptions to the public duty doctrine do not apply here.[22] "The mere presence" of police personnel at an event is not enough to give rise to the requisite special relationship such that the police personnel owe would a duty to prevent minors from consuming alcohol at the event. *Torres*, 36 Wash. App. 668, 673 (1984). This is true even where police personnel are specially hired to check the identification of event attendees to ensure they were of drinking age. *Id.*

It is undisputed that Plaintiffs' daughter was killed when her car was hit by a truck being driven by Kevin Miranda. January Order at 2. Under Nevada's public duty doctrine, the CCSD Defendants cannot be liable to Plaintiffs for failing to prevent Miranda from drinking when the CCSD Defendants owed Plaintiffs no duty to do so in the first place, even had the officers been on-duty at the Wamsley Party, which undisputedly, they were not. *See Bruttomesso*, 95 Nev. 151, 153, 591 P.2d 254, 255.

---

[21] *See also O'Brien v. City of Tacoma*, 247 Fed. Appx. 58 (9th Cir. 2007) (noting that the public duty doctrine "provid[es] generally that for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one.)); *Torres v. Salty Sea Days, Inc.*, 36 Wash. App. 668 (1984) ("The duty to provide police services is owed generally to the public as a whole and not to any particular individual."); *Jackson v. Clements*, 194 Cal. Rptr. 553, 555 (Cal. Ct. App. 1983).

[22] The exceptions are when (1) "there is some form of privity between the police department and the victim that sets the victim apart from the general public . . ., and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim." *Torres v. Salty Sea Days, Inc.*, 36 Wash. App. 668, 673 (1984); *see also Bruttomesso*, 95 Nev. 151, 153, 591 P.2d 254, 255.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Lastly, none of the exceptions to Nevada's public duty doctrine are applicable here because the CCSD Defendants had no privity with Plaintiffs such that they could have shared any "special relationship" and did not create the danger that caused their injuries.[23] The January Order erred by imposing a duty on the CCSD Defendants that does not exist in law. The Court incorrectly found that an issue of fact exists as to whether the CCSD Defendants owed a duty to Plaintiffs to stop underage drinking that allegedly occurred in their presence. This is a legal issue not a factual inquiry. The law is clear that the CCSD Defendants did not owe any such duty to Plaintiffs and as a matter of law, Plaintiffs cannot recover for breach of a duty that did not exist in the first place. Based on this clear error of law, the Court should reconsider the January Order and grant the CCSD Defendants summary judgment on Plaintiffs' claims against the CCSD Defendants that are based on conduct alleged to have occurred at the Wamsley Party.[24]

### IV. The January Order Erred in Allowing Plaintiffs' *Monell* Claim to Survive Summary Judgment Based on "Allegations" of Final-Policy Maker Involvement Where No Constitutional Injury Was Alleged and No Evidence of Final-Policy Maker Action Was Submitted.

The January Order's analysis of Plaintiffs' *Monell* claim declaredly relies on the viability of Plaintiffs' other Section 1983 claims, which as explained above, are subject to summary judgment and precluded by the CCSD Defendants' qualified immunity. For this reason, the Court should reconsider its *Monell* analysis and grant summary judgment to the CCSD Defendants on this claim.

Although the January Order reasoned that CCSD and its employees "institute[ed], allow[ed], and acquiec[ed] to policies and behavior that failed to prevent and proximately led to the death of Angela Peterson"[25] the Court cites no evidence in the record to support such a proposition, and cites only Plaintiffs' complaint, which is inappropriate at the summary judgment stage. *See Anderson v. v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 205 (1986); Fed. R. Civ. P. 56. Under *Monell*, municipal liability can attach only when (1) a city employee violated the plaintiff's constitutional rights pursuant to an official policy or informal practice of the municipal entity; (2) that the violator

[23] Notably, it is undisputed that none of the CCSD Defendants had ever met Plaintiffs at the time of the Wamsley Party.
[24] These claims include Plaintiffs' negligent training and supervision claims, Plaintiffs' respondeat superior claim, Plaintiffs' ratification claim, and Plaintiffs' claims for intentional and negligent infliction of emotional distress.
[25] January Order at 8.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

had final policy-making authority, and thus the act itself is official policy or (3) a person with final policy-making authority ratified the unconstitutional behavior. *Lauren v. Nellis*, 2011 WL 5598313, *7 (D. Nev. 2011) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). A "final policy-maker" is an individual who "possesses final authority to establish municipal policy with respect to the action ordered." *Gilette*, 979 F.2d at 1350. "Whether a particular official has final policy-making authority is a question of state law." *See id.* at 1346.

The Ninth Circuit has cautioned that courts must be careful in attributing liability to a municipal entity based upon ratification, as "to hold cities liable whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law…" *See Gilette*, 979 F.2d at 1348. Ratification for purposes of § 1983 is found only where a final policy-maker approves a subordinate's decision "*and the basis for it*." *Id.* Furthermore, ratification must be shown by "affirmative or deliberative conduct. *See id.* No evidence in the record suggests that CCSD has a policy that encourages or condones minors drinking alcohol or driving while under the influence.[26] Lastly, the Court committed clear error in concluding that Plaintiffs' *Monell* claim against CCSD could survive because the underlying claims "involve conduct by employees who ***allegedly*** had final policy-making authority." January Order at 8 (emphasis added). This is clear error because whether an official has final policy-making authority is a question of *law*, not fact, and Plaintiffs' allegations are therefore irrelevant. Further, Plaintiffs have no evidence supporting that a final policy-maker *of CCSD* ratified the conduct that occurred at the Wamsley Party, which is essential to their claim and warrants reconsideration.[27]

///

///

[26] In fact, evidence cited elsewhere in the January Order demonstrates that CCSD's superintendent at the time, Dwight Jones, expected that if off-duty school police witnessed minors consuming alcohol, that he expected they would intervene. Additionally, the suggestion that CCSD instituted and acquiesced to polices or behaviors that led to the death of Angela Peterson is directly undermined by Plaintiffs' remaining unsupported allegations that CCSD employees hid and concealed the conduct of CCSD employees at the Wamsley Party. Clearly, efforts to hide and conceal do not support a theory of affirmative approval of the alleged conduct at the Wamsley Party.

[27] *See Collins v. City of San Diego*, 841 F.2d 337, 341-42 (9th Cir. 1988) (holding city was not liable for employment actions of police sergeant, even though police sergeant had "discretion to recommend hiring, firing, and discipline of employees," where he was not the city official responsible for establishing final departmental employment policy).

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

### V. The January Order Erred in Allowing Plaintiffs' Conspiracy Claim to Stand Even Though No Concrete and Particularized Injury Was Identified, and No Underlying Tortious Behavior Was Shown.

The January Ordered erred in allowing Plaintiffs' conspiracy claim to stand based on the unsupported finding that "the Petersons have alleged a concrete injury." January Order at 12. The Court reasoned that "the Petersons *allege* more than just CCSD's failure to investigate. The Petersons also *allege* that CCSD employees conspired to cover-up the actions of department employees who attended the holiday party where underage defendant Miranda drank alcohol, drove while intoxicated, and ultimately killed Angela Peterson." Id. (emphasis added). Specifically, the Court allowed Plaintiffs' conspiracy claim to survive based on the following *allegations*:[28]

- "CCSD employees conspired to cover-up the actions of department employees who attended the holiday party." January Order at 12:6-7.
- Defendant Arroyo directed, and Johnson, Quintanilla, and Nebeker carried out this cover-up. January Order at 12:8-10.
- "[T]he goal of the conspiracy was to hide employee attendance and conduct at the holiday party to protect CCSD and its employees from liability." January Order at 12:11-12.

However, even taking Plaintiffs' allegations as true, which is no longer appropriate at this stage of the proceedings, neither Plaintiffs nor the Court identify how CCSD Employees' unsuccessful conspiracy to cover-up employee attendance at the Wamsley Party caused an injury to Plaintiffs. Not only is a concrete and particularized injury a prerequisite to Plaintiffs' standing, but a concrete injury is also the crux of a conspiracy claim.

A conspiracy standing alone, does not create otherwise nonexistent liability. "The gist of a civil conspiracy is not the unlawful agreement but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy itself, but by the wrongful acts done by the defendants to the injury of the plaintiff." *Eikelberger v. Tolotti*, 96 Nev. 525, 528 n.1, 611 P.2d 1086 (1980). "[C]onspiracy gives rise to a cause of action ***only if*** (1) an underlying civil wrong has been committed resulting in damage, and (2) the alleged conspirator was personally bound by the duty violated by the wrongdoing." *Applied Equipment Corp. v. Litton Saudi Arabia*

---

[28] As discussed in section VII herein, the Court's reliance on Plaintiffs' allegations as opposed to evidence at this stage of the proceedings was improper, and when Plaintiffs' allegations and "evidence" are examined, it is clear that Plaintiffs' allegations lack merit and are based on speculation, hearsay, and unconfirmed rumor.

*Ltd.*, 7 Cal.4th 503, 514, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994) (emphasis added).

The Court erred in allowing Plaintiffs' civil conspiracy claim to withstand summary judgment because Plaintiffs have shown no concrete and particularized that provides standing to challenge an alleged conspiracy to cover-up CCSD Employee attendance at the Wamsley Party. It is undisputed that (a) the alleged conspiracy occurred after the death of Plaintiffs' daughter and therefore, legally, could not have caused the same; (b) Plaintiffs were not denied access to the Courts based on the alleged cover-up; (c) the alleged cover-up did not cause Plaintiffs to rely on misrepresentations to their detriment; and (d) Plaintiffs cannot prove the elements of an IIED claim, such that emotional distress could serve as the "concrete and particularized injury" conferring standing on Plaintiffs to bring a civil conspiracy claim based on the alleged cover-up. Each of these issues will be discussed below and provide independent grounds for reconsideration.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

***a. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Cover-up Could Not Have Caused the Death of Plaintiffs' Daughter.***

It goes without saying that the cover-up that Plaintiffs allege occurred at CCSD in the months following the Wamsley Party did not cause the death of Plaintiffs' daughter. Accordingly, to the extent the January Order relies on Plaintiffs' loss of their daughter to support a "concrete and particularized injury" resulting from the conspiracy, the conspiracy claim is subject to dismissal.

***b. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Court Has Already Determined that the Alleged Cover-Up Did Not Deny Plaintiffs Access to the Courts.***

The Court has already found that Plaintiffs were not denied access to the courts because Plaintiffs "have failed to establish that their other claims and remedies are, or will be, ineffective as they have pending wrongful death claims against Miranda, Miranda's parents,[29] and those individuals who allegedly gave alcohol to Miranda at the holiday party." January Order at 7. Accordingly, a denial of access to the Courts cannot serve as the "concrete and particularized" injury Plaintiffs suffered as a result of the alleged conspiracy.

Plaintiffs' allegations of a cover-up essentially allege that the CCSD Defendants conspired

---

[29] Plaintiffs filed a stipulation on January 28, 2014 to voluntarily dismiss Kevin Miranda's parents Chary and Eric Miranda. (Doc. # 255). The voluntary dismissal does not change the analysis.

to cover-up evidence of employee attendance at the party. However, even if true, there is no tort liability in Nevada for spoliation of evidence. *See Timber Tech Engineered Bldg. Products v. The Home Ins. Co.*, 118 Nev. 630, 633, 55 P.3d 952, 954 (2002). Where there is no tort liability for the underling conduct, Plaintiffs cannot sustain a conspiracy claim based on the same.

***c. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because the Alleged Cover-up Did Not Cause Plaintiffs to Rely on Misrepresentations to their Detriment.***

Essentially, Plaintiffs' argument is that the CCSD Defendants conspired to lie about who attended the Wamsley Party and disposed of party fliers sent via department email.[30] However, Plaintiffs failed to present any admissible evidence supporting their case theory. Furthermore, even if Plaintiffs could show an affirmative misrepresentation on the part of the CCSD Defendants, to show the underlying tort of intentional misrepresentation, Plaintiffs would also need evidence to show that they relied on the misrepresentation to their detriment. Because Plaintiffs proffered no evidence supporting any detrimental reliance, they have failed to show any damages resulting from the alleged conspiracy to conceal employee attendance at the Wamsley Party.[31] Lastly, Plaintiffs cannot recover based on a purported conspiracy to conceal employee attendance at the Wamsley Party because it is undisputed that the CCSD Defendants informed Metro that CCSD employees attended the Wamsley Party, and Metro interviewed the employees.[32]

***d. Plaintiffs Have Failed to Show Injury Resulting from the Alleged Cover-Up Because Emotional Distress Cannot Serve as the Concrete and Particularized Injury.***

Although the Court did not address what concrete and particularized injury Plaintiffs incurred as a result of the alleged conspiracy, the Court concluded that Plaintiffs' injury consisted of the emotional distress caused by the belief that CCSD police department did not investigate and

---

[30] To the extent that Plaintiffs allege a conspiracy to not conduct an IA investigation, the conspiracy is still not actionable: "A private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146 (1973); *Tia v. Criminal Investigation Demanded as Set Forth*, 441 Fed. Appx. 457, 458 (9th Cir. 2011) (holding that individuals lack standing to "compel an investigation or prosecution of another person). Accordingly, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S.*, 410 U.S. 614, 619 (1973). Likewise, "[a] claim of negligent investigation will not lie against police officers." *O'Brien v. City of Tacoma*, 247 Fed. Appx. 58 (2007) (quoting *Laymon v. Washington State Dep't of Natural Resources*, 99 Wash. App. 518, 994 P.2d 232, 239 (2000) (applying Washington law).

[31] *See Eikelberger v. Tolotti*, 96 Nev. 525, 611 P.2d 1086 (1980) (holding that where no detrimental reliance has been shown and an element of underlying tort is missing, civil conspiracy claim cannot survive).

[32] See Reply at 4, facts # 7-9.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

terminate individuals who attended the Wamsley Party. However, Plaintiffs have not presented evidence supporting the underlying claim of IIED such that they could recover claim for conspiracy to cause IIED. There is no evidence in the record supporting the contention that the CCSD Defendants engaged in a conspiracy for the purpose of causing Plaintiffs emotional distress. Indeed, Plaintiffs' allegations regarding the alleged conspiracy all relate to communications made *internally* within the CCSD police department. There is no evidence of CCSD communications or actions directed to Plaintiffs. Instead, the evidence shows that CCSD gave Metro information regarding individuals that attended the Wamsley Part and Metro conducted an investigation.[33] Plaintiffs cannot show CCSD acted with an intent to harm Plaintiffs or establish the other elements of the underlying tort of IIED, thus they cannot recover.

Additionally, even assuming Plaintiffs could support a claim for conspiracy to commit IIED, the Nevada Supreme Court would likely adopt the rationale of other courts that have held that IIED cannot serve as the underlying tort for a conspiracy claim. In *Almy v. Grisham*, the Supreme Court of Virginia exhaustively analyzed whether intentional infliction of emotional distress can serve as the underlying tort for a civil conspiracy claim and concluded that it could not. 273 Va. 68, 639 S.E.2d 182 (2007). The court reasoned:

> If we were to recognize a conspiracy claim based on an agreement to commit this tort, the difficulties resulting from this absence of clear guidance would be compounded. Courts and juries would be faced with the amorphous task of determining whether parties have entered into an agreement to engage in conduct that cannot be defined objectively. Determinations of this nature would invite great uncertainty and speculation on the part of the fact finder.

273 Va. 68, 80-81, 639 S.E.2d 182, 188-189.

Here, given the similarity between Virginia and Nevada law on common law conspiracy claims,[34] it is likely that the Nevada Supreme Court would adopt the reasoning and holding of *Almy*, and hold that IIED cannot serve as an underlying tort for a conspiracy claim. Accordingly,

---

[33] See Reply at 4, facts # 7-10.

[34] The court noted that Virginia's common law claim of civil conspiracy "generally requires proof that the underlying tort was committed" and that "a conspiracy claim based on [an] underlying tort would include the[] same elements of proof." 273 Va. at 81, 639 S.E.2d at 189. Notably, the same is true of a conspiracy claim under Nevada law. *See Eikelberger v. Tolotti*, 96 Nev. 525, 611 P.2d 1086.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

reconsideration is warranted on Plaintiffs' conspiracy claim.

## VI. The January Order's Conclusions on Plaintiffs' Claims for NIED, IIED, Respondeat Superior, Ratification, Negligent Training and Supervision, and Punitive Damages Are Inconsistent with Mandatory Nevada Precedent.

The January Order erred in its legal analysis of Plaintiffs' remaining state law causes of action by not taking into account Nevada's public duty doctrine and central undisputed facts. Each cause of action will be addressed in turn.

### *a. NIED*

The January Order concluded that Plaintiffs' NIED claim could stand because "in Nevada, a direct victim of a defendant's negligent acts can recover for negligent infliction of emotional distress,"[35] and "as direct victims of defendants' alleged negligence, the Petersons have standing to pursue a claim for negligent infliction of emotional distress." January Order at 9. However, this is clear error because, as discussed above, the public duty doctrine prevents Plaintiffs' recovery for the defendants' negligent failure to enforce the law, and accordingly, even if they are direct victims of the alleged negligent acts of defendants, Nevada's public duty doctrine prevents any recover under NIED. Lastly, individuals may not recover under NIED for claims that law enforcement officers failed to adequately investigate allegations in "reckless indifference" to their rights. *O'Brien v. City of Tacoma*, 247 Fed. Appx. 58, 60-61 (9th Cir. 2007).[36]

Here, regardless of whether the "alleged negligence" referred to on page 9 of the January Order is the alleged negligence of not preventing the crime of underage drinking, or whether it is

[35] The Court cited *Shoen v. Amerco, Inc.* 896 P.2d 469, 477 (Nev. 1995) for this proposition. See January Order at 9. However, as several other courts have explained, *Shoen* stands only for the proposition that direct victims of negligence can recover emotional distress damages, not that a separate NIED claim ban be brought absent a viable negligence claim. *See Edberg v. Desert Palace, Inc.*, 2011 WL 1157301, *2 (D. Nev. 2011); *Myers-Desco v. Lowe's HIW, Inc.*, 2012 WL 1376759, *2 (D. Nev. 2012); *Villagomes v. Laboratory Corp. of America*, 783 F.Supp.2d 1121, 1126 (D. Nev. 2011) (explaining that although some have misinterpreted *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) to reach the conclusion that there is a direct victim NIED claim in Nevada, "this is simply not true.").

[36] In *O'Brien*, the Ninth Circuit affirmed summary judgment for the city and its police officers where "[Plaintiff] base[d] her [NIED] claim not on aspects of the officers' personal interaction with her but on the manner in which they conducted their investigation. The conduct of that investigation was the performance of a duty owed to the public at large." *Id.* Similarly, in *Jarvis v. City of Mesquite Police Department*, the court found that because the plaintiffs' "negligent infliction of emotional distress claim ar[ose] from City's duty to take seriously complaints about one of its officers committing sexual assaults and to investigate appropriately, Plaintiff's negligent infliction of emotional distress claim is based on the same theory as her negligent supervision claim and therefore is barred by discretionary immunity." 2012 WL 600804, *5 (D. Nev. Feb. 23, 2012). As addressed in Section VI(e), *infra*, the Court erred by not applying Nevada's discretionary immunity statute to Plaintiffs' claim for negligent supervision and under *Jarvis*, this immunity should extend to Plaintiffs' NIED claim as well.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

the alleged negligence of not conducting an internal investigation, Plaintiffs simply cannot recover under NIED as a matter of law, and the Court erred by not granting summary judgment to the CCSD Defendants on this claim.

***b. IIED***

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts § 46, comment h. Here, the allegations against the CCSD Defendants are that they (1) did not conduct IA investigations into their employees who attended the Wamsley Party and (2) that supervisors in the dispatch department advised employees not to discuss the Wamsley Party *amongst themselves*. These allegations do not support "atrocious" conduct outside the bounds of a civilized society, <u>especially when it is undisputed that the CCSD police department contacted Metro the Monday following the accident and provided Metro with names of employees who attended the Wamsley Party</u>. Telling employees not to discuss the Wamsley Party amongst themselves, while simultaneously providing Metro with information that CCSD employees had attended the Wamsley Party is not the "atrocious" conduct required to sustain an IIED claim under Nevada law.[37] Furthermore, the alleged conduct was in no way directed at Plaintiffs given that no evidence supports that the CCSD Defendants and Plaintiffs have had any communications other than through this lawsuit. The Court erred by allowing Plaintiffs' IIED claim to survive summary judgment.

***c. Respondeat Superior***

The January Order denied summary judgment to the CCSD Defendants on Plaintiffs' respondeat superior claim because

> there are disputed issues of material fact relating to whether off-duty CCSD police officers who attended the holiday party had a duty to stop the underage drinking. If they had such a duty, then those same employees' failure to prevent underage drinking at the holiday party was conduct within the scope of their employment. Further, there is sufficient evidence that supervisory employees of the department engaged in conduct after the holiday party as part of their supervisory duties that covered up the activities of other employees who attended the party.

[37] *See* Reply at 6.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

January Order at 11.

The Court's conclusion contains multiple legal errors. First, whether a duty exists is a question of law, not fact. *Lee v. GNLV Corp.*, 117 Nev. 291, 212, 22 P.3d 209 (2001) ("[W]hether a 'duty' to act exists is a question of law solely to be determined by the court."). Second, Nevada's public duty doctrine legally forecloses the possibility that off-duty police owe "a duty to stop underage drinking." *See* NRS 41.0336; *Bruttomesso v. Las Vegas Metropolitan Police Department*, 95 Nev. 151, 153, 591 P.2d 254, 255 (1979). Third, the Court's conclusion that CCSD police officers who attended the holiday party might have acted in the course of their employment is directly contradicted by the Court's finding that "there is no evidence from which it can reasonably be inferred that any conduct at the Wamsley party was undertaken on behalf of CCSD." January Order at 10. Even where off-duty police officers act as private security guards, their employment as such is not within the scope of their duties as police officers and the police department or city employing them cannot be held liable for negligent acts they commit when acting as private security. *Torres v. Salty Sea Days, Inc.*, 36 Wash. App. 668, 672-73 (1984). If police officers cannot be held liable for failure to enforce the law even when they are off-duty, there is no basis in law to hold CCSD liable for off-duty conduct. Thus, CCSD is entitled to summary judgment.

***d. Ratification***

The January Order erred in that it allowed Plaintiffs' ratification claim to withstand summary judgment because the alleged cover-up regarding employee attendance at the Wamsley Party was "*allegedly* taken on CCSD's behalf." January Order at 10 (emphasis added). However, even if the cover-up was allegedly taken on CCSD's behalf, an agent's unauthorized actions taken on behalf of the principal do not become ratified unless and until the principal expresses affirmance of the agents' actions. See Restatement (Second) of Agency § 82 ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . ."). Furthermore, the January Order erred in that it allowed Plaintiffs' ratification claim to withstand summary judgment despite the fact that the conduct allegedly ratified, i.e., the cover-up, did not cause Plaintiffs any injuries. See Section V, *supra*.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Additionally, the Nevada Supreme Court has refused to find ratification where a principal at first conceals an agent's bad conduct, but later reveals it to the investigating law enforcement agency. *See Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 247, 127 Nev. Adv. Op. 23 (2011). Moreover, "failure to punish or discharge an employee does not constitute ratification by the employer." *Fields v. Shelton Fertilizer Co., Inc.*, 798 F.2d 1414, *4 n.3 (6th Cir. 1986).

Under *Sparks*, Plaintiffs' ratification claim is subject to dismissal because the Nevada Supreme Court has refused to find ratification where a principal at first conceals an agent's bad conduct but later reveals it to a law enforcement agency. Plaintiffs have not disputed that the CCSD Defendants on the Monday following the accident informed Metro that CCSD police department employees had attended the Wamsley Party.[38] Nor have Plaintiffs disputed that CCSD provided Metro with the anonymous letter it received accusing the department of a cover-up.[39] Accordingly, the CCSD Defendants cannot be liable for attempting a cover-up when it is undisputed that they provided the relevant information directly to the law enforcement agency with jurisdiction.

Lastly, because neither Plaintiffs nor the Court have identified any *admissible* evidence supporting the contention that the CCSD Defendants affirmed actions allegedly taken to cover-up employee attendance at the Wamsley Party, and the undisputed evidence confirms that CCSD provided information to Metro, the January Order committed clear error in allowing Plaintiffs' ratification claim to survive summary judgment.

***e. Negligent Hiring and Training***

The January Order dismissed Plaintiffs' negligent hiring claim finding that the CCSD Defendants were entitled to discretionary-act immunity. January Order 10. However, in dismissing Plaintiffs' negligent hiring claim, the Court allowed Plaintiffs' negligent training and supervision claims to stand because "in Nevada, discretionary immunity does not extend beyond the hiring of an employee to that employee's retention and supervision." January Order at 9 (citing *Doe v. Estes*, 926 F. Supp. 979 (D. Nev. 1996). However, the Court's reliance on *Doe* was error because the court in *Doe* improperly applied the planning/operational dichotomy test in determining whether

---

[38] See Reply at 3-4, facts # 7-9.
[39] See Reply at 4, facts # 8-10.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

discretionary act immunity applied, and the planning/operational dichotomy was modified, if not rejected in *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S. Ct. 1954 (1988). Because the Nevada Supreme Court has specifically adopted the test for discretionary immunity used by *Berkovitz*, and *Berkovitz* rejected the analytical framework that was employed by the court in *Doe*, *Doe* does not represent the current law on Nevada's discretionary immunity.

The Nevada Supreme Court has recently held that "supervision of employees . . . is a discretionary function entitled to immunity." *Univ. of Nev. School of Medicine v. Eighth Judicial Dist. Ct.*, 2012 WL 5288007, Case No. 61058 (Nev. Oct. 23, 2012).[40] The Court erred in refusing to find that Nevada's discretionary-immunity applies to Plaintiffs' claims for negligent training and supervision. Reconsideration is warranted in light of more recent case law. Lastly, summary judgment is also appropriate based on Plaintiffs' lack of admissible evidence supporting these claims as raised in CCSD' motion for summary judgment, but not addressed in the January Order.[41]

***f. Punitive Damages***

Although the January Order dismissed Plaintiffs' punitive damages claim as to CCSD based on NRS 41.035, the Court allowed the claim to remain as to the individual CCSD Defendants. January Order at 11. However, this was clear error because NRS 41.035 bars punitive damages against the individual CCSD Defendants in the same way that it bars those damages against CCSD. Specifically, NRS 41.035(1) provides that punitive damages are not allowed in an award "against a present or former ***officer or employee of the State or any political subdivision***." (emphasis added). Accordingly, the Court erred in allowing the punitive damages claim to stand with respect to the individual CCSD Defendants and the Court should reconsider the conclusions in the January Order and grant the CCSD Defendants summary judgment on this claim.

---

[40] Citing NRS 41.032; *Martinez v. Maruszczak*, 123 Nev. 422, 446, 168 P.3d 720, 730 (2007) (adopting the two prong *Berkovitz-Gaubert* test in deciding whether a discretionary act qualified for immunity); *Neal-Lomax v. Las Vegas Metropolitan Police Department*, 574 F. Supp. 2d 1170, 1192) (D. Nev. 2008) (holding that under the standards set forth in *Martinez*, supervision of employees qualifies as a discretionary act entitled to immunity.), *aff'd*, 2010 WL 997110 (9th Cir. Mar. 17, 2010)); *see also Belch v. Las Vegas Metropolitan Police Dep't*, 2011 Wl 1070175, * (D. Nev. Mar. 21, 2011) (finding discretionary act immunity to apply to negligent training and supervision claims as a matter of law "[b]ecause the Nevada Supreme Court has adopted the federal case law on discretionary act immunity in applying Nev. Rev. Stat. § 41.032."); *Jarvis v. City of Mesquite Police Dep't*, 2012 WL 600804, *5 (D. Nev. Feb. 23, 2012); *Koiro v. Las Vegas Metropolitan Police Dep't*, 2013 WL 236898, *2 (D. Nev. Jan. 22, 2013).

[41] See Doc. # 202 at 15.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

## VII. The January Order Erred by Applying the Motion to Dismiss Standard to CCSD's Motion for Summary Judgment and by Replying on Inadmissible Evidence.

Throughout the January Order, the Court incorrectly applied the motion to dismiss standard (i.e., taking all of Plaintiffs' allegations as true and repeatedly citing to Plaintiffs' "allegations," not "evidence") to CCSD's motion for summary judgment. This is clear error because the Court can no longer simply accept Plaintiffs' allegations as true at the summary judgment stage. Instead, to defeat a motion for summary judgment, Plaintiff was required to cite *admissible* evidence demonstrating that there were issues of fact precluding summary judgment. Plaintiffs never did so and Court's citations to allegations rather than evidence in the record further supports that the wrong standard was applied to the CCSD Defendants' motion. Because the Court applied the incorrect standard when determining the merits of the CCSD Defendants' Motion for Summary Judgment, the Court incorrectly found there to be genuine issues of material fact where none exist.[42]

Eight factual statements in the January Order that are not supported by admissible evidence and require reconsideration and/or amending the January Order are set forth below.

### *a. Factual Error: The Evidence Does Not Support the Conclusion that Nebeker attended the holiday party.*

**(i) Statement in Order:** Nebeker, a police sergeant with the department, attended the party (January Order 5:16).

**(ii) Evidence & Argument:** In support of this statement, the Opposition cites to the testimony of Christina Zeddies (who did not attend the Wamsley Party) and to the deposition of Penny Higgins who admitted to having memory problems.[43] *See* Opposition, page 3, footnote 7. Although the size of footnote 7 in the Opposition is intimidating, the references to Nebeker are sparse and are insufficient from an evidentiary standpoint to support the conclusion that Nebeker was at the Wamsley Party. Ms. Zeddies testified that during a meeting with Nebeker regarding her

---

[42] Additionally "conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment." *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 345 (9th Cir. 1995). Speculation is defined as "[t]he act or practice of theorizing about matters over which there is no certain knowledge." Black's Law Dictionary (9th ed. 2009). As the Ninth Circuit has quoted: "If, indeed, evidence [is] available to underpin (the) conclusory statement, Rule 56 require[s] (the party opposing summary judgment) to come forward with it." *Thornhill Publishing Co., Inc. v. General Telephone & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972)).

[43] Ms. Higgins testified she has Multiple Sclerosis ("MS") that affects her memory and often had to refer to notes during her deposition. Opposition to CCSD'S Motion for Summary Judgment (Doc. # 217) ("Opposition"), at Ex. 8, P. Higgins Depo. at 8:18-9:22; 11:9-19; 89:9-90:20; 140:15-141:15.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

work schedule she accused him of being at the Wamsley Party and he did not deny it.[44] A purported discussion regarding the Wamsley Party is not a substitute for personal knowledge that Nebeker attended the party as required by Rule 602 of the Federal Rules of Evidence. Ms. Higgins testimony that Nebeker attended the Wamsley Party is contradicted not only by Nebeker but also by the testimony of nine other deponents in this case who testified they were at the party and that Nebeker was not in attendance.[45] Based on the foregoing, if anything, Ms. Higgins testimony creates a disputed fact as to Nebeker's attendance at the party. Thus the statement that Nebeker attended the party is a clear error.

***b. Factual Error: The Evidence Does Not Support the Conclusion that Nebeker saw Miranda and other minors drinking.***

**(i) Statement in Order:** [Nebeker] *allegedly* saw Miranda and other minors drinking but failed to stop the underage drinking. (Order 5:16-17)(emphasis added).

**(ii) Evidence & Argument:** The Opposition does not contain a reference to any evidence that alleges and/or supports the statement that Nebeker saw Miranda drinking and failed to stop him for drinking. Similarly the Opposition does not contain evidence to support the statement that Nebeker saw minors other than Miranda drinking and failed to stop them from doing so. There are not even allegations in the Second Amended Complaint ("SAC") that support the statement in the Order. Nebeker is only identified in the "Party" section of the SAC and no claims are asserted in the SAC related to any purported conduct of Nebeker at the Wamsley Party.[46]

The closest Plaintiffs get to providing support for the statement referenced above is on page 7 of the Opposition. Therein, Plaintiffs rely on the testimony of Ms. Higgins to establish when Nebeker purportedly left the party and summarily conclude that "it would have been impossible for School District employees and officers to be unaware underage drinking was occurring at the party."[47] However, the testimony of Ms. Higgins does not support the conclusion that Nebeker saw Miranda and other minors drinking. As indicated above, at best, there is a disputed fact regarding if Nebeker was even at the Wamsley Party. Moreover, even if you assume Ms. Higgins testimony

---

[44] Opposition, page 3, f.n. 7, Exhibit 1, Christina Zeddies deposition at 276:4-14 and 277.
[45] *See* Appendix A to Reply, page 4, Exhibit 8, Brian Nebeker deposition, 35:3-6.
[46] *See* SAC, on file herein as Doc. #172. Nebeker is specifically identified only in paragraphs 11 and 17.
[47] Opposition, 7:1-6.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

regarding Nebeker's attendance at the Wamsley Party is accurate, there is no evidence that he saw Miranda or other minors drinking alcohol.

The evidence simply does not support the statement made by the Court. Notably, Kevin Miranda testified that he hid and concealed the fact that he was drinking when he was around adults at the party.[48] Additionally, Ms. Higgins testified that Nebeker left the party around 7:00 or 7:30 p.m. after eating dinner.[49] This is significant because the events that Ms. Higgins claims CCSD officers [not Nebeker specifically] may have witnessed occurred after she claims Nebeker left the party.[50] Indeed, a number of other attendees that were deposed testified that the bulk of teenagers did not show up at the Wamsley Party until 10:00-10:30 p.m. Thus the bulk of teen age drinking occurred at least three (3) hours after Nebeker left the party (if he was actually there).[51] Ms. Higgins also testified that when Nebeker left the party, he walked out the front door and walked around the front of the garage.[52] This is important because the purported drinking occurred in the garage and there is no testimony that indicates Nebeker was physically in the garage area and witnessed anything therein. Moreover, a third party cannot conclusively testify to what Nebeker saw at the party pursuant to Rules 602 and 701 of the Federal Rules of Evidence. Accordingly, Ms. Higgins testimony in this regard should not have been the basis for the Court's statement.

***c. Factual Error: The Evidence Does Not Support the Conclusion that Quintanilla and Nebeker ordered all CCSD dispatcher not to discuss the holiday party.***

**(i) Statement in the Order:** Quintanilla and Nebeker ordered all CCSD dispatchers to not discuss the holiday party or the death of Angela Peterson with anyone, particularly other CCSD department employees. (Order 6:10-12).

**(ii) Evidence & Argument:** The Opposition makes similar statements on page 10 and page 24 and relies on footnotes 66 and 125 respectively. However, the evidence relied on by Plaintiffs in both instances is the deposition of Mike Thomas[53] and is inadmissible hearsay that

---

48 *See* Reply, Appendix A, page 4 and Ex. 9, deposition of K. Miranda 20:6-13, 112:4-12.
49 Opposition at Ex. 8, P. Higgins Deposition, 127:21- 128:6.
50 *See* Reply, Appendix A, page 4 and Ex. 8 to Opposition, deposition of P. Higgins, 32:21-23 and 44.
51 *See* Reply, Appendix A, page 4 and Ex. 2, deposition of Carrie Williams 38:19-39:23.
52 Opposition at Ex. 8, P. Higgins Deposition, 128:19-21.
53 Mr. Thomas is a disgruntled CCSD employee pursuing claims employment discrimination claims against CCSD.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

cannot be used to defeat summary judgment.[54] As the Court is aware, hearsay evidence is inadmissible, under Rule 801 of the Federal Rules of Evidence and consequently, may not be considered on summary judgment. *Orr*, 285 F.3d at 773–74, 778 (affirming district court's refusal to consider hearsay evidence in ruling on a motion for summary judgment). The hearsay rule precludes a person from testifying as to "co-workers' statements to [the person] concerning alleged encounters by the co-workers with Defendant." *DeMarco v. W. Hills Montessori*, 350 Fed. App'x 592, 594 (2d Cir. 2009). Furthermore, "[a]llowing [a person] to testify to hearsay statements that detail events she herself did not witness presents a significant risk of undue prejudice." *Id.*

Here, the only evidence proffered by Plaintiffs is from a disgruntled CCSD police officer relaying information he purportedly obtained from "some dispatchers".[55] The entirety of Thomas's testimony relied on by Plaintiffs follows:

> *And when I talked to some of the dispatchers, they said that Armando Quintanilla and Sergeant Nebeker had gathered all the dispatchers together and had ordered them to keep the door to the dispatch closed, to keep it secure, there would be no one talking about Wamsley's party about the DUI, about the investigation and no person other than dispatchers would be allowed in there.*

Mike Thomas deposition at 39:15-22. Thomas' testimony regarding what was purportedly said at the dispatchers meeting is clearly inadmissible as he was not at the meeting and has no personal knowledge regarding what was said. Accordingly, the Court erred in relying on Thomas' testimony to conclude that Quintanilla and Nebeker ordered all CCSD dispatchers not to discuss the holiday party or the death of Angela Peterson.

***d. Factual Error: The Evidence Does Not Support the Conclusion that Johnson had long lunches with individual party attendees and advised them not to discuss the party.***

**(i) Statement in Order:** Johnson had long lunches with individual attendees of the party and advised them not to discuss the party in any manner with any other persons. (Order 6:14-15).

**(ii) Evidence:** Once again the evidence relied on by Plaintiffs is inadmissible hearsay. Plaintiffs attempt to establish this "fact" based on testimony from Mike Thomas and an

[54] *See* Reply, Appendix A, pages 3- 4.
[55] *See* Mike Thomas deposition at 39:15-22.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

affidavit from Vince Glaviano.[56] Neither provides the evidentiary support the Court needs to recognize the statement as factual in summary judgment proceedings.

The portion of Thomas' deposition cited discusses his purported knowledge regarding the lack of an investigation and that it "was fairly obvious to—to everybody down in Henderson at the police headquarters that Loren Johnson was gathering those people who had been identified as being involved and they were going out and they were taking two-, three-hour lunches during the work day.[57]" Even if admissible, nothing in citation referenced indicates that Johnson advised party attendees not to discuss the party in any manner with any person. Moreover, when Thomas was asked to specifically identify occasions when he saw people being taken away for long lunches, he identified one occasion and admitted that he was not present during the discussion and has no personal knowledge regarding the conversations.[58] As set forth above, the Court should exclude the inadmissible hearsay statements by Thomas and cannot rely on the same when considering summary judgment.

In regard to the affidavit of Vince Glaviano, it also does not support the statement that Johnson had long lunches with individual attendees of the party and advised them not to discuss the party in any manner with any other persons.[59] The paragraph relied on by Plaintiffs in support of the statement above, indicates that Glaviano saw Johnson on numerous occasions talking to dispatchers and Robert Morales and indicates he saw Morales and Johnson go to lunch together.[60] Nothing in this paragraph discusses long lunches between Johnson and dispatchers. Additionally, there is nothing in this paragraph of the affidavit indicating Glaviano has any personal knowledge regarding discussions Johnson had with any party attendees and does not indicate that Johnson advised any party attendees not to discuss the party.[61] Accordingly, the affidavit is not admissible evidence pursuant to Rule 602 and 701 of the Federal Rules of Evidence for the purpose stated.

---

[56] Opposition, page 10, footnote 67.
[57] Thomas Deposition II, page 151:22-152:4.
[58] *See* Reply, Appendix A, page 3, and Thomas Deposition II, 254:10-255:22.
[59] *See* Glaviano Affidavit, page 5, ¶ 18. Notably, Glaviano affidavit is in large part based on discussions he had with dispatcher Rebecca Densmore and discussions with Mike Thomas and therefore is inadmissible hearsay.
[60] Id.
[61] Id.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

***e. Factual Error: The Evidence Does Not Support the Conclusion that Arroyo ordered the destruction of holiday party fliers or erased party emails from the department email system.***

**(i) Statement in Order:** Arroyo ordered the destruction of all holiday party fliers including the erasure of all holiday party e-mails from the department e-mail system. (Order 6:17-18).

**(ii) Evidence:** There is no evidence to support this statement. The factual statement in the Opposition indicates that the party invitation was taken down after the party, that two individuals were unable to locate an email related to the party and that a flyer purportedly left in a locker was missing.[62] Thereafter, Plaintiffs attempt to spin the facts to suggest that Arroyo swept issues related to Angela's death under the rug, but Plaintiffs do not provide evidentiary support for the same.[63] There is no evidence that Arroyo ordered the destruction of holiday fliers or erased emails from the department email system. Indeed, not one of the 22 deponents in this case testified there was such an order from Chief Arroyo. Moreover, when Magistrate Leen looked at this specific issue in the context of a motion filed by Plaintiffs for spoliation of evidence specifically related to the email, Judge Leen denied the motion and noted "[t]he record does not support a finding that the e-mails were deleted - - the emails that were sent attaching the flier to harm the plaintiffs' presentation of this case or interfere with any legal rights.[64]" It was clear error for the Court to use this unsupported statement as a basis to find that disputed facts prevented summary judgment on claims related to allegations of a post-holiday party cover-up.

***f. Factual Error: The Evidence Does Not Support the Conclusion that defendants caused the destruction of evidence.***

**(i) Statement in Order:** The Petersons have proffered evidence that the moving defendants caused the destruction of evidence and failed to conduct an investigation into CCSD employees' conduct at the holiday party despite allegations that those employees violated both CCSD policies and Nevada law. (Order 8:17-20).

**(ii) Evidence:** It is unclear from the Order what, if any, admissible evidence

---

[62] Opposition, page 10:5-8.
[63] Opposition, page 11:1-2.
[64] Transcript from hearing Doc. # 226 at 51:1-5.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Plaintiffs proffered in support of this statement. To the extent the Court is relying on the factual statement in the Opposition indicating that the party invitation was taken down after the party, that two individuals were unable to locate an email related to the party and that a flyer purportedly left in a locker disappeared[65] Plaintiffs' have not offered evidence that CCSD or any of the individual CCSD Defendants destroyed evidence. Furthermore, in regard to the lack of an investigation conducted by CCSD, the undisputed evidence indicates that CCSD provided information to Metro and that Metro was the entity that investigated the events surrounding Angela Peterson's death.[66]

***g. Factual Error: The Evidence Does Not Support the Conclusion that CCSD Defendants covered up the actions of CCSD employees and attempted to prevent the discovery of employee conduct at the party.***

**(i) Statement in Order:** The Petersons have established that moving CCSD Defendants, acting with the purpose of protecting CCSD from liability, covered up the actions of CCSD employees and attempted to prevent discovery of the employee conduct at the holiday party. (Order 10:12-15).

**(ii) Evidence:** It is unclear from the Order what, if any, admissible evidence Plaintiffs proffered establishing that CCSD defendants acted in such a manner. Indeed, the opposite is true as the undisputed evidence indicates that CCSD provided information to Metro the Monday after the car accident.[67] After CCSD provided Metro names of several employees that attended the Wamsley Party, Metro interviewed the employees and was provided names of other individuals, including additional CCSD employees at the Wamsley Party.[68] There could be no cover-up as CCSD provided information directly to Metro to investigate. The Court erred in relying on unsupported statements made by Plaintiffs to reach this conclusion.

***h. Factual Error: The Evidence Does Not Support the Conclusion that supervisory employees engaged in conduct after the part that covered up the activities of other employees.***

**(i) Statement in Order:** There is sufficient evidence that supervisory employees of the department engaged in conduct after the holiday party as part of their supervisory duties that

---

[65] Opposition, at 10:5-8.
[66] *See* Reply, at 3-4, facts # 5-10.
[67] *See* Reply, at 3-4, undisputed facts 5-10.
[68] *See* Reply, at 4, undisputed facts 9-10.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

covered up the activities of other employees who attended the party. (Order 11:2-5).

**(ii) Evidence:** It is unclear from the Order what, if any, admissible evidence Plaintiffs proffered to support this conclusion. However, as set forth herein, there is no admissible evidence that "Quintanilla and Nebeker ordered all CCSD dispatchers to not discuss the holiday party or the death of Angela Peterson with anyone, particularly other CCSD department employees."[69] The only evidence offered by Plaintiffs was the inadmissible hearsay testimony of Mike Thomas who did not attend the purported meeting and/or hear the alleged directive.[70] Similarly, there is not admissible evidence indicating Johnson, had long lunches with individual attendees of the party and advised them not to discuss the party in any manner with any other persons.[71] Once again, the only support provided in the Opposition for this statement was from individuals that did not participate in the meetings and only had combined personal knowledge of one meeting and a lunch in an unspecified timeframe.[72] There is also no evidence that supervisory employees directed documents to be destroyed or acted otherwise to cover-up what happened following the car accident.[73] To the contrary, the evidence shows that CCSD supervisors contacted Metro following the accident and provided Metro the names of several party attendees and that Metro investigated the car accident.[74]

Because of the errors outlined above, the Court's finding that there is sufficient evidence of supervisory conduct to cover up activities of employees who attended the party is also erroneous.

## C. CONCLUSION

Based on the numerous clear errors of law contained in the January Order, the CCSD Defendants respectfully request the Court reconsider the conclusions it made in the January Order and grant summary judgment to the CCSD Defendants on all of Plaintiffs' claims for relief.

///

///

---

[69] January Order 6:10-12.
[70] *See* Section VII(3), *supra*.
[71] January Order 6:14-15.
[72] *See* Section VII(4), *supra*.
[73] *See* Section VII(5), *supra*.
[74] *See* Reply, page 3-4, undisputed facts 5-10.

DATED this 31st day of January, 2014.

GREENBERG TRAURIG, LLP

BY: */s/ Kara B. Hendricks*

MARK E. FERRARIO
Nevada Bar No. 1625
KARA B. HENDRICKS
Nevada Bar No. 7743
MOOREA L. KATZ
Nevada Bar No. 12007
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
***Counsel for Defendants***
***Clark County School District, Filiberto Arroyo, Brian Nebeker, Loren Johnson, and Armando Quintanilla***

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
3773 Howard Hughes Parkway - Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January 2014, I served the foregoing **CCSD DEFENDANTS' MOTION FOR RECONSIDERATION OF JANUARY 10, 2014 ORDER** on:

Marc P. Cook, Esq.
BAILUS COOK & KELESIS, LTD.
517 South 9th Street
Las Vegas, Nevada 89101
***Counsel for Plaintiffs***

J. Hopkins, Esq.
PYATT SILVERSTRI & HANLON
701 Bridger Avenue, Suite 600
Las Vegas, Nevada 89101
***Counsel for Kevin Miranda, Eric Miranda & Chary Miranda***

Daniel F. Polsenberg, Esq.
Matthew Park, Esq.
LEWIS & ROCA, LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
***Counsel for Mark Robbins, Roberto Morales, Tina Zuniga and Cynthia Ruelas***

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

☒ by the United States District Court, District of Nevada's ECF system.

*/s/ Joyce Heilich*
an employee of Greenberg Traurig, LLP