UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| LINDA PETERSON; et. al, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:11-cv-01919-LRH-PAL |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KEVIN MIRANDA; et. al, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is defendants Roberto Morales ("Morales"), Tina Zuniga ("Zuniga"), Mark Robbins ("Robbins") and Cynthia Ruelas ("Ruelas") (collectively "moving defendants") motion for summary judgment. Doc. #233.[1] Plaintiffs Linda and Francis Peterson ("the Petersons") filed an opposition (Doc. #240) to which moving defendants replied (Doc. #252).

**I.   Facts and Procedural History**

This action arises from the tragic death of the Petersons' daughter, Angela Peterson.

On November 28, 2009, non-party Rebecca Wamsley ("Wamsley"), a dispatcher for defendant the Clark County School District ("CCSD") Police Department ("department"), hosted a holiday party at her home and invited members of the department and their family.

Defendant Zuniga attended the holiday party with her daughter and her daughter's eighteen (18) year old boyfriend, defendant Kevin Miranda ("Miranda"). Despite being underage, Miranda

---

[1]Refers to the court's docket entry number.

drank alcohol provided at the party. Miranda then left the party intoxicated, ran a red light, and crashed his parents' truck into a vehicle driven by Angela Peterson, killing her. Miranda subsequently pled guilty to a category B felony, and is currently serving an eighty (80) month prison sentence.

On October 20, 2011, the Petersons filed a complaint for wrongful death against all defendants. Doc. #1, Exhibit 1. On June 5, 2013, the Petersons filed a second amended complaint against defendants alleging thirteen causes of action: (1) negligence against all defendants; (2) negligence against Eric Miranda and Chary Alvarado Miranda ("Miranda's parents"); (3) violation of NRS § 41.440 against Miranda's parents; (4) violation of NRS § 41.1305 against defendants Zuniga, Ruelas, Robbins, and Morales; (5) constitutional violations under 42 U.S.C. § 1983 against CCSD and all CCSD employee defendants; (6) intentional infliction of emotional distress against all defendants; (7) negligent infliction of emotional distress against all defendants; (8) negligent hiring, retention, and supervision against CCSD; (9) ratification against CCSD; (10) respondeat superior against CCSD; (11) punitive damages against CCSD and all CCSD employee defendants; (12) punitive damages against Miranda; and (13) civil conspiracy against CCSD and all CCSD employee defendants. *See* Doc. #172. Thereafter, moving defendants filed the present motion for summary judgment. Doc. #233.

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

///

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.    Discussion**

Moving defendants seek summary judgment on the Petersons' first cause of action for negligence; fourth cause of action for violations of NRS § 41.1305; fifth cause of action for constitutional violations under § 1983; sixth cause of action for intentional infliction of emotional distress; seventh cause of action for negligent infliction of emotional distress; eleventh cause of action for punitive damages; and thirteenth cause of action for civil conspiracy. *See* Doc. #233. The court shall address each cause of action below, beginning with the constitutional claims.

**A. Constitutional Violation Under § 1983**

Section 1983 provides a remedy to individuals whose constitutional rights have been violated by a person acting under color of state law. *See Burke v. County of Alemeda*, 586 F.3d 725

(9th Cir. 2009). In order for an individual to bring a successful Title 42 U.S.C. § 1983 claim, the plaintiff must show that the challenged conduct (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962). To establish that a person was "acting under the color of law," a plaintiff must show that: (1) defendant's conduct was performed while acting, purporting to act, or pretending to act in the performance of official duties; (2) defendant's conduct must have had the purpose and effect of influencing the behavior of others; and (3) the challenged conduct must have been related in some meaningful way either to defendant's governmental status or to the performance of his duties. *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006).

In their second amended complaint, the Petersons allege three separate claims under Section 1983: (1) constitutional violations relating to conduct by CCSD employees at the holiday party; (2) constitutional violations relating to a cover-up by CCSD employees after the holiday party; and (3) a denial of access to the courts claim. *See* Doc. #172. Moving defendants seek summary judgment as to all three claims. However, on January 10, 2014, the court dismissed the Petersons' denial of access to the courts claim in the court's order granting in-part and denying in-part the CCSD and other CCSD defendants' motion for summary judgment (Doc. 202). *See* Doc. #254. Therefore, the court shall only address the remaining two Section 1983 claims.

### 1. Holiday Party

In their complaint, the Petersons allege that the off-duty CCSD employees attending Wamsley's holiday party were acting under color of state law when they failed to stop defendant Miranda, an underage attendee of the party, from drinking and that his resulting intoxication was a direct cause of their daughter's death. *See* Doc. #172.

Generally, a private, non-sponsored party held by a state employee does not immediately transform into a state-sponsored event if other state employees are invited and present. Rather, there must be some additional evidence of conduct by the off-duty CCSD employees attending the party

4

1  that would constitute the performance of official duties. *See Anderson*, 451 F.3d at 1068. Here, it is
2  undisputed that neither defendant Zuniga nor defendant Ruelas engaged in any conduct at the party
3  that would constitute the performance of an official duty. Both Zuniga and Ruelas were employed
4  by CCSD as police dispatchers for the department. The Petersons' allegations that Zuniga and
5  Ruelas provided alcohol to Miranda and other minors has no relationship to their positions or job
6  duties. Their duties include dealing with calls to the department and interacting with department
7  police officers, and there is no evidence that they engaged in any conduct that could possibly be
8  construed to involve these duties. Accordingly, the court shall enter judgment in favor of both
9  defendants as it relates to their conduct during Wamsley's holiday party.

10       As to defendants Morales and Robbins, however, the court finds that they are not entitled to
11 summary judgment. Viewing the evidence in the light most favorable to the Petersons as the non-
12 moving party, defendants Morales and Robbins, police officers with the department, attended the
13 party and saw Miranda and other minors drinking, but failed to stop the underage drinking or
14 prevent Miranda from driving while intoxicated. Although Morales and Robbins contend that they
15 had no duty to prevent minors from drinking at the holiday party or prevent Miranda from driving
16 under the influence, the Petersons have proffered sufficient evidence to raise a disputed issue of
17 material fact that CCSD police officers have an obligation arising from their employment, even
18 while off-duty, to respond to criminal activity - including, and especially, underage drinking and
19 driving. For example, CCSD Superintendent Dwight Jones testified in his deposition that it was his
20 expectation that, as part of their employment, CCSD police officers would respond to and prevent
21 crimes like underage drinking that occur in their presence. *See* Doc. #217, Exhibit 23, Jones Depo.,
22 p.42:6-10. Therefore, the court finds that there are disputed issues of material fact related to the
23 duties and employment obligations of off-duty CCSD police officers which precludes granting
24 moving defendants Morales and Robbins summary judgment on this claim.
25 ///
26 ///

**2.  Post Holiday Party Cover-up**

In their complaint, the Petersons also allege that after the death of Angela Peterson, defendants engaged in a cover-up of CCSD employees' activities at the party that destroyed evidence, thereby irreparably weakening their legal claims. *See* Doc. #172.

The court has reviewed the documents and pleadings on file in this matter and finds that there are disputed issues of material fact relating to moving defendants Zuniga, Ruelas, and Robbins that precludes granting summary judgment. Viewing the evidence in the light most favorable to the Petersons, these three moving defendants engaged in conduct furthering the alleged cover-up that could be construed as part of their official duties including participation in the destruction of evidence about employee attendance and activities at the holiday party. For example, moving defendants Zuniga and Ruelas were part of the CCSD dispatcher pool that was ordered by other CCSD defendants to not discuss the holiday party or the death of Angela Peterson with anyone, particularly other CCSD department employees, or investigators. Further, there is evidence that moving defendants Zuniga and Ruelas collaborated their stories about the events at the party and their personal and joint conduct prior to meeting with a department internal affairs officer, contributing to the department's decision to not investigate allegations that CCSD employees had violated both CCSD policies and Nevada law. Similarly, there is evidence that defendant Robbins used his position in the department to dissuade other department employees, including dispatcher Penny Higgins ("Higgins"), from discussing the party with investigators. Based on these disputed issues of material fact, which relate directly to moving defendants' official activities after the holiday party, the court finds that summary judgment is inappropriate.

In comparison, there is no evidence that defendant Morales engaged in any activity as part of his employment that contributed to the alleged department cover-up. The Petersons' sole allegation against Morales is that because he was Robbins' supervisor, he must have known and been involved in Robbins' actions in furtherance of the cover-up. However, there is no evidence supporting this allegation. Therefore, the court shall enter judgment in favor of Morales on this claim.

**B. Negligence**

To prevail on a claim for negligence, the Petersons must establish that (1) the defendants owed them a duty of care; (2) the defendants breached that duty; (3) the breach was the legal and proximate cause of an injury; and (4) damages resulting from that injury. *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996).

In their second amended complaint, the Petersons' allege two separate negligence theories. The first theory is that moving defendants were negligent in providing and distributing alcohol to defendant Miranda at the party. The second is that moving defendants were negligent by failing to act in accordance with the duties of a reasonable person by preventing a drunk minor from driving a vehicle. The court shall address both theories below.

**1. Distribution of Alcohol**

In their motion, moving defendants contend that they are entitled to summary judgment on the Petersons' first theory for negligence because the distribution of alcohol is not the proximate cause of Angela Peterson's death as a matter of law. *See* Doc. #233. The court agrees.

The Nevada Supreme Court has repeatedly held that there is no common law claim for negligence arising out of the distribution of alcohol. Rather, as a matter of law, the proximate cause of any damage resulting from a person who has consumed alcohol is the consumption of the alcohol itself, not its distribution. *Hamm v. Carson City Nugget, Inc.*, 450 P.2d 358, 359 (Nev. 1969); *Snyder v. Viani*, 885 P.2d 610, 612 (Nev. 1994). This bright line rule even applies when minors are provided alcohol. *See Hinegardner v. Marcor Resorts*, 844 P.2d 800, 803 (Nev. 1992) (refusing to overrule *Hamm* and allow a common law negligence claim against vendors who serve alcohol to minors). Thus, Miranda's consumption of alcohol at the party is the sole proximate cause of Angela Peterson's death. It is irrelevant whether moving defendants played beer pong with Miranda, or gave him drinks directly. Therefore, the court shall grant moving defendants' motion as to this negligence theory.

///

**2. Control of Dangerous Conduct**

In Nevada, it is well established that a reasonable person owes no duty to control the dangerous conduct of another or to warn others endangered by the dangerous conduct of another. *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001). However, there is an exception to this general rule if (1) there is a special relationship between the defendant and the dangerous person; and (2) the harm created by the defendant's conduct is foreseeable. *Id.*; *see also, Sims v. General Telephone & Electric*, 815 P.2d 151, 157 (Nev. 1991).

In their motion, moving defendants argue that they are entitled to summary judgment on the Petersons' second theory for negligence because there is no special relationship between moving defendants and Miranda, and as such, there was no duty to control Miranda's dangerous behavior in driving under the influence.

The court has reviewed the documents and pleadings on file in this matter and finds that as to defendants Zuniga and Ruelas, CCSD department police dispatchers, they had no special relationship with Miranda as a matter of law. Accordingly, the court shall grant defendants Zuniga and Ruelas summary judgment on this claim.

As to defendants Robbins and Morales, however, the court finds that there are disputed issues of material fact precluding summary judgment on this issue. Although defendants Robbins and Morales argue that they did not have a duty to prevent or stop underage drinking, evidence gathered in this case, viewed in the light most favorable to the Petersons, establishes that school district police officers are obligated to take action to address underage drinking and driving even while off duty or at a holiday party. Further, that evidence establishes that by no means are department police officer employees permitted to ignore, condone, or participate in underage drinking. *See* Section III.A.1 *supra*. Under the limited circumstances of this case - involving school district police officers engaged in drinking with minors - the court finds that there could be a special relationship between defendants Morales and Robbins and defendant Miranda as a result of their employment that would create a duty by these defendants to prevent Miranda's dangerous conduct

of driving under the influence. Therefore, the court shall deny moving defendants Morales and Robbins' motion on this claim.

### C. NRS § 41.1305

The Petersons have also alleged a claim against moving defendants under NRS § 41.2305. This statute provides that, in specific and limited circumstances, an individual can be held liable for any damage that results from a minor's consumption of alcohol. In particular, the statute provides liability for individuals who (1) furnish alcohol to a minor; and/or (2) knowingly allow a minor to consume alcohol on their property. *See* NRS § 41.1305(2). In their complaint, the Petersons allege that moving defendants are liable under both provisions of the statute.

#### 1. Furnishing Alcohol

NRS § 41.1305(2)(a) extends liability for any damages caused by a minor as a result of that minor's consumption of alcohol to any person that "[k]nowingly serves, sells or otherwise furnishes" alcohol to the minor. In their motion, moving defendants argue that there is no evidence that any of them served or furnished alcohol to Miranda, and therefore, they cannot be liable for his subsequent conduct in causing the death of Angela Peterson.

The plain language of NRS 41.1305(2)(a) requires more than simply being present while a minor consumes alcohol. In fact, the word furnish in the statute necessarily implies an affirmative action in providing the alcohol to a minor. *See Bennett v. Letterly*, 141 Cal. Rptr. 682 (Cal. Ct. App. 1977) ("[t]he word 'furnish' implies some type of affirmative action on the part of the furnisher; failure to protest or attempt to stop another from imbibing an alcoholic beverage does not constitute 'furnishing.'"). Here, the court finds that there is no evidence that defendant Morales provided any alcohol to Miranda. Similarly, the only evidence concerning defendant Robbins is that he brought whiskey to the party that Miranda partially consumed. However, there is no evidence that Robbins gave whiskey to Miranda or allowed Miranda to drink from the bottle. Further, there is no evidence that Robbins saw Miranda pour whiskey from the bottle and allowed him to do so, or even knew that Miranda was drinking whiskey, in comparison to beer or other alcohol, at the party. Rather, the

evidence establishes that Robbins simply left the whiskey on the alcohol table set up in the garage. Although there is evidence that Robbins watched Miranda play beer pong with defendants Zuniga and Ruelas, and should have seen that Miranda was intoxicated before Miranda left the party, the evidence does not support a finding that Robbins had knowledge that Miranda was specifically drinking the alcohol that he had bought and provided for the party. Thus, the court finds that under these limited circumstances, and the lack of any evidence relating to an affirmative action, Robbins did not "furnish" alcohol to Miranda as a matter of law. Therefore, the court shall grant moving defendants Morales and Robbins summary judgment on this claim.

However, as to defendants Zuniga and Ruelas, the court finds that viewing the evidence in the light most favorable to the Petersons, there are disputed issues of material fact relating to whether they "furnished" alcohol to Miranda in violation of the statute. For example, Higgins, another police dispatcher who attended the party, testified in her deposition that Zuniga asked Miranda if he had ever had a shot before, and when he responded "no", stated that she would fix one for him. Further, Higgins testified that both Zuniga and Ruelas played beer pong - a game that forces players to drink beer from cups during the game - with Miranda and that they provided him the beer that he used during the game. Finally, Higgins testified that after the party, Zuniga spoke with her and stated that she had a right to let her daughter drink, inferring the she had provided alcohol to minors during the party. Accordingly, the court shall deny summary judgment to defendants Zuniga and Ruelas.

### 2. Premises Liability

NRS § 41.1305(2)(b) extends liability for damages caused by a minor as a result of that minor's consumption of alcohol to any person that "[k]nowingly allows [a minor] to consume an alcoholic beverage on premises or in a conveyance belonging to the person or over which the person has control." In their motion, moving defendants argue that they did not have control over the Wamsley premises during the party and, thereby, they are entitled to summary judgment on this theory of liability. The court agrees.

1  In order to establish liability under subsection 2(b) of NRS 41.1305, the Petersons must
2  establish that the moving defendants had control over Wamsley's home while at the party and
3  knowingly allowed Miranda to drink alcohol at those premises. "Control" is generally defined as "to
4  exercise power or influence over." Black's Law Dictionary 353 (8th Ed. 2004). The undisputed
5  evidence in this action establishes that moving defendants did not have the ability to exercise power
6  or influence over Wamsley's property. Moving defendants did not own the property nor did
7  Wamsley give moving defendants authority to act in her stead at the party. Wamsley had sole
8  control over her home and confirmed as much in her deposition testimony. Although the Petersons
9  argue that, as adults and persons of law enforcement authority, the minors at the party would have
10 obeyed any orders given by moving defendants, there is still no evidence that anyone other than
11 Wamsley had authority to allow or disallow certain conduct during the party. Accordingly, the court
12 shall grant moving defendants motion as to this claim.

### D. Intentional Infliction of Emotional Distress

14  To establish a claim for intentional infliction of emotional distress, a plaintiff must show:
15 (1) extreme or outrageous conduct by defendant; and (2) that plaintiff suffered severe emotional
16 distress. *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Extreme and
17 outrageous conduct is that which is "outside all possible bounds of decency" and is intolerable in
18 civil life. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 25 (Nev. 1998).

19  The court has reviewed the documents and pleadings on file in this matter and finds that
20 there are disputed issues of fact relating to moving defendants' conduct that precludes summary
21 judgment. As addressed previously, the Petersons have proffered evidence that moving defendants -
22 except for defendant Morales - participated in a department cover-up of CCSD employees'
23 activities at the holiday party that led to the destruction of evidence and hindered investigation into
24 CCSD employees' conduct. *See* Section III(A)(2) *supra*. Further, viewing the evidence in the light
25 most favorable to the Petersons, these actions were taken in conscious disregard of the Petersons'
26 attempts to investigate the events that led to their daughter's death, causing emotion trauma. Thus,

the Petersons have proffered sufficient evidence of extreme and outrageous conduct by moving defendants Zuniga, Ruelas, and Robbins to survive summary judgment. However, as to defendant Morales, whom there is no evidence of participation in the cover-up, nor any evidence of furnishing alcohol to Miranda, the court shall grant summary judgment on this claim.

### E. Negligent Infliction of Emotional Distress

A plaintiff can recover for negligent infliction of emotional distress if he/she (1) is a bystander closely related to the victim of an accident, (2) is located near the scene of the accident, and (3) suffers a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident. *See Crippens v. Sav On Drug Stores*, 961 P.2d 761, 762 (Nev. 1998).

In their motion, moving defendants contend that the Petersons were not bystanders to the accident which killed their daughter and therefore, they fail to establish a claim for negligent infliction of emotional distress. *See* Doc. #202. The court agrees.

In Nevada, a direct victim of a defendant's negligent acts can recover for emotional distress caused by the defendant's negligence. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) ("If a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery. . . We recognize that the negligent infliction of emotional distress can be an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff."). However, the recovery for emotional distress by a direct victim does not change the basic requirement that only a bystander may bring a claim for negligent infliction of emotional distress. *See Pitti v. Alberstons, LLC*, 2:11-cv-0280-MMD, 2012 WL 1931243, at *4 (D. Nev. 2012). Instead, the *Shoen* decision, "merely held that plaintiffs pleading negligence may obtain emotional distress damages just as [negligent infliction of emotional distress] claimants may." *Id*. Thus, the Petersons are entitled to seek emotional damages as direct victims of defendants' negligence to the extent alleged in their negligence claim. However, as they were not bystanders to the accident that claimed the life of Angela Peterson, they may not recover

12

under the separate cause of action for negligent infliction of emotional distress. Accordingly, the court shall grant moving defendants' motion as to this claim.

**F.  Punitive Damages**

In their complaint, the Petersons seek punitive damages against all CCSD employee defendants. *See* Doc. #172. In Nevada, punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." NRS § 42.005. As there are disputed issues of fact concerning moving defendants' actions and conduct, the court shall not foreclose the possibility of punitive damages at this time, and shall deny moving defendants' motion as to this issue.

**G.  Civil Conspiracy**

The Petersons' final cause of action is for civil conspiracy. To establish a claim for civil conspiracy, a plaintiff must establish: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001); *see also, Consol. Generator-Nev. Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (an actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts."). Further, in Nevada, the plaintiff must establish with particular specificity "the manner in which a defendant joined in the conspiracy and how he participated in it." *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984).

In their motion, moving defendants contend that the Petersons have failed to establish the requisite elements of a civil conspiracy. In particular, moving defendants argue that the Petersons have proffered no evidence which demonstrates that any individual defendant entered into an agreement or formed a conspiracy with any of the other defendants. Moving defendants also contend that there is no evidence the individual defendants engaged in any wrongful act in furtherance of a conspiracy. Finally, moving defendants argue that there is no evidence that plaintiffs were harmed by any specific overt act performed by the individual defendants pursuant to

a conspiracy. As such, moving defendants argue that they are entitled to summary judgment on this claim.

The court has reviewed the documents and pleadings on file in this matter and finds that there are disputed issues of fact relating to the conduct of defendants Zuniga, Ruelas, and Robbins that precludes summary judgment on this claim. For example, Higgins testified that Zuniga and Ruelas met with each other at the department and entered into an agreement to fix their stories of events before meeting with investigators. Further, Higgins testified that Robbins participated in the departments' actions or preventing others from speaking about the party. Viewing this evidence in the light most favorable to the Petersons, these three moving defendants entered into an agreement to prevent an investigation of their activities at the holiday party with other non-moving defendants. This agreement ultimately led to the destruction of evidence about employee attendance and activities at the holiday party to the detriment of the Petersons. Based on these disputed issues of material fact, the court finds that summary judgment as to these defendants is inappropriate.

In comparison, there is no evidence that defendant Morales engaged in any activity that contributed to the alleged department cover-up or agreed with other defendants to engage in any specific conduct. Accordingly, the court shall enter judgment in favor of Morales on this claim.

IT IS THEREFORE ORDERED that moving defendants' motion for summary judgment (Doc. #233) is GRANTED in-part and DENIED in-part in accordance with this order.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Tina Zuniga and against plaintiffs Linda and Francis Peterson on plaintiffs' first cause of action for negligence as it relates to the distribution of alcohol; first cause of action for negligence as it relates to the failure to control the dangerous conduct of another; fourth cause of action for violation of NRS 41.1305 as it relates to premises liability; fifth cause of action for constitutional violations under 42 U.S. § 1983 as it relates to conduct that occurred during the holiday party; and seventh cause of action for negligent infliction of emotional distress.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Cynthia Ruelas and against plaintiffs Linda and Francis Peterson on plaintiffs' first cause of action for negligence as it relates to the distribution of alcohol; first cause of action for negligence as it relates to the failure to control the dangerous conduct of another; fourth cause of action for violation of NRS 41.1305 as it relates to premises liability; fifth cause of action for constitutional violations under 42 U.S. § 1983 as it relates to conduct that occurred during the holiday party; and seventh cause of action for negligent infliction of emotional distress.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Roberto Morales and against plaintiffs Linda and Francis Peterson on plaintiffs' first cause of action for negligence as it relates to the distribution of alcohol; fourth cause of action for violation of NRS 41.1305 as it relates to furnishing alcohol; fourth cause of action for violation of NRS 41.1305 as it relates to premises liability; fifth cause of action for constitutional violations under 42 U.S. § 1983 as it relates to conduct that occurred after the holiday party; sixth cause of action for intentional infliction of emotional distress; seventh cause of action for negligent infliction of emotional distress; and thirteenth cause of action for civil conspiracy.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Mark Robbins and against plaintiffs Linda and Francis Peterson on plaintiffs' first cause of action for negligence as it relates to the distribution of alcohol; fourth cause of action for violation of NRS 41.1305 as it relates to furnishing alcohol; fourth cause of action for violation of NRS 41.1305 as it relates to premises liability; and seventh cause of action for negligent infliction of emotional distress.

IT IS SO ORDERED.

DATED this 7th day of July, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE