UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| LINDA PETERSON; *et. al*, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:11-cv-01919-LRH-PAL |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KEVIN MIRANDA; *et. al*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is defendants the Clark County School District ("CCSD"), Filiberto Arroyo ("Arroyo"), Brian Nebeker ("Nebeker"), Loren Johnson ("Johnson"), and Armando Quintanilla's ("Quintanilla") (collectively "moving defendants") motion for reconsideration of the court's January 10, 2014 order denying in-part and granting in-part their motion for summary judgment (Doc. #254[1]). Doc. #257. Plaintiffs Linda and Francis Peterson ("the Petersons") filed an opposition (Doc. #261) to which moving defendants replied (Doc. #265).

**I.    Facts and Procedural History**

This action arises from the tragic death of the Petersons' daughter, Angela Peterson.

On November 28, 2009, non-party Rebecca Wamsley ("Wamsley"), a dispatcher for the CCSD Police Department ("department"), hosted a holiday party at her home and invited members of the department and their families. Defendant Tina Zuniga ("Zuniga") attended the holiday party

---

[1]Refers to the court's docket entry number.

with her daughter and her daughter's eighteen (18) year old boyfriend, defendant Kevin Miranda ("Miranda"). Despite being underage, Miranda drank alcohol provided at the party. Miranda then left the party intoxicated, ran a red light, and crashed his parents' truck into the vehicle driven by Angela Peterson, killing her. Miranda subsequently pled guilty to a category B felony, and is currently serving an eighty (80) month prison sentence.

On October 20, 2011, the Petersons filed a complaint for wrongful death against all defendants. Doc. #1, Exhibit 1. On June 5, 2013, the Petersons filed a second amended complaint against defendants alleging thirteen causes of action: (1) negligence against all defendants; (2) negligence against Eric Miranda and Chary Alvarado Miranda ("Miranda's parents"); (3) violation of NRS § 41.440 against Miranda's parents; (4) violation of NRS § 41.1305 against defendants Zuniga, Cynthia Ruelas, Mark W. Robbins, and Roberto Morales; (5) constitutional violations under 42 U.S.C. § 1983 against CCSD and all CCSD employee defendants; (6) intentional infliction of emotional distress against all defendants; (7) negligent infliction of emotional distress against all defendants; (8) negligent hiring, retention, and supervision against CCSD; (9) ratification against CCSD; (10) respondent superior against CCSD; (11) punitive damages against CCSD and all CCSD employee defendants; (12) punitive damages against Miranda; and (13) civil conspiracy against CCSD and all CCSD employee defendants. *See* Doc. #172.

In response, moving defendants filed a motion for summary judgment on several of the Petersons' claims. Doc. #202. On January 10, 2014, the court granted in-part and denied in-part moving defendants' motion. Doc. #254. Thereafter, moving defendants filed the present motion for reconsideration of the court's January order. Doc. #257.

**II.     Legal Standard**

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Rule 59(e) provides that a district court may reconsider a prior

order where the court is presented with newly discovered evidence, an intervening change of controlling law, manifest injustice, or where the prior order was clearly erroneous. FED. R. CIV. P. 59(e); *see also United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *Sch. Dist. Co. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Further, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order" for sufficient cause. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001).

**III.   Discussion**

In their motion for reconsideration, moving defendants raise challenges to the court's January order. In particular, moving defendants argue that reconsideration is warranted because: (1) the court misapplied the legal standard for police officers acting under color of State law as to defendant Nebeker; (2) the court erred in allowing the Petersons' post-accident cover-up claim to survive summary judgment despite dismissing the Petersons' similar denial of access to the courts claim; (3) the court erred in allowing the *Monell* claim against defendant CCSD to survive summary judgment; (4) the court failed to address whether moving defendants were entitled to qualified immunity as to all Section 1983 claims;[2] (5) the court failed to address whether Nevada's public duty doctrine precludes the Petersons' state law tort claims based upon an alleged failure to enforce the law;[3] (6) the court erred in allowing the civil conspiracy claim to proceed when there had been no showing of a concrete and particularized injury; (7) the court misapplied applicable Nevada law concerning the Petersons' remaining state law tort claims; and (8) the court made improper factual

---

[2] The court notes that at no point in their initial motion for summary judgment did moving defendants raise the issue of qualified immunity to this court. A motion for reconsideration is not an appropriate avenue to raise new arguments not properly raised in the underlying motion. *See* FED. R. CIV. P. 59(e). Further, defendants have recently filed a new motion for summary judgment solely on the grounds of qualified immunity. *See* Doc. #267. Therefore, the court shall not consider this argument at this time.

[3] Moving defendants also did not properly raise any challenge to the Petersons' state law claims based on the public duty doctrine in their prior motion for summary judgment. Therefore, the court shall likewise not consider this argument in this order.

3

findings unsupported by the evidence.[4] Doc. #257. The court shall address the relevant challenges below.

**A. Section 1983 Challenges**

Section 1983 provides a remedy to individuals whose constitutional rights have been violated by a person acting under color of state law. *See Burke v. County of Alemeda*, 586 F.3d 725 (9th Cir. 2009). In order for an individual to bring a successful Title 42 U.S.C. § 1983 claim, the plaintiff must show that the challenged conduct (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962).

In their second amended complaint, the Petersons alleged four separate claims under Section 1983: (1) constitutional violations relating to conduct by CCSD employees at the holiday party; (2) constitutional violations relating to a cover-up by CCSD employees after the holiday party; (3) a denial of access to the courts claim; and (4) liability against CCSD under *Monell v. Dept. of Soc. Serv.*, 436 U.S. 691 (1978). *See* Doc. #172. In the court's January order, the court dismissed the Petersons' denial of access to the court claim, but allowed the other three claims to proceed. *See* Doc. #254. Moving defendants now argue that the court erred in allowing the three remaining constitutional claims to survive summary judgment. *See* Doc. #257. The court shall address each challenge to the constitutional claims below.

**1. Defendant Nebeker**

In the court's January order, the court found that defendant Nebeker was not entitled to summary judgment on the Petersons' Section 1983 claim for conduct that occurred at the holiday party because Nebeker, a police sergeant with the department, "failed to act or attempt to stop the

---

[4] The court recognizes that moving defendants are dissatisfied and disagree with the court's prior order. However, the court made no unsupported or improper final factual findings in the January order. All factual statements made by the court were based on the appropriate and limiting summary judgment standard of viewing the evidence in the light most favorable to the Petersons as the non-moving party. All evidence before the court was considered. It is clear that there are numerous factual disputes between the parties.

4

underage drinking." Doc. #254, p. 5. The court further found that "the Petersons have proffered sufficient evidence to raise a disputed issue of material fact that CCSD police officers have an obligation arising from their employment, even while off-duty, to respond to criminal activity - including, and especially, underage drinking." *Id*.

In their motion for reconsideration, moving defendants argue that the court erred in denying Nebeker summary judgment because he did not take any affirmative action or engage in any conduct at the party to support a finding that he acted under color of State law.

Generally, to establish that a person was "acting under the color of law," a plaintiff must show that: (1) defendant's conduct was performed while acting, purporting to act, or pretending to act in the performance of official duties; (2) defendant's conduct must have had the purpose and effect of influencing the behavior of others; and (3) the challenged conduct must have been related in some meaningful way either to defendant's governmental status or to the performance of his duties. *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006); *see also West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."). However, there is a more limited theory of Section 1983 liability where a State or state official affirmatively places a person in a dangerous situation. *See Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054 (9th Cir. 1998). To establish a claim under Section 1983 for a state-created danger, a plaintiff "must show that the state official participated in creating a dangerous situation, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *Id*. at 1059. This standard requires a plaintiff to demonstrate that the state official was more than just grossly negligent in their actions. *Id*. (citing *L.W. v. Grubbs*, 92 F.3d 894, 899-900 (9th Cir. 1996)).

Here, reviewing the evidence submitted in support of summary judgment, the court finds that it erred in denying defendant Nebeker summary judgment on this claim. The court finds that there is no evidence that Nebeker participated in creating the dangerous situation of underage

5

drinking and driving that occurred at the Wamsley party, nor did he act with any deliberate indifference to that obvious danger. The only evidence concerning Nebeker's actions at the holiday party - the testimony of non-party Peggy Higgins ("Higgins") - establishes that Nebeker left the holiday party early, before Miranda got into the vehicle and drove away. Thus, he was not present to either create or ignore the danger of Miranda driving intoxicated. Therefore, the court finds that reconsideration of the court's January order on this issue is warranted and the court shall grant defendant Nebeker summary judgment on this claim.

### 2. Post Holiday Party Cover-up

In the prior order, the court found that moving defendants were not entitled to summary judgment on the Petersons' Section 1983 claim for conduct that occurred after the holiday party because there were disputed issues of material fact relating to moving defendants' conduct in the alleged cover-up." Doc. #254, p. 6. Moving defendants now argue that the January order contains an irreconcilable inconsistency requiring reconsideration. Specifically, moving defendants contend that despite properly dismissing the Petersons' access to the court claim, the court allowed the Petersons' cover-up claim to survive summary judgment even though the Petersons have failed to establish any other constitutionally protected right violated by the alleged cover-up.

The court has reviewed the documents and pleadings on file in this matter and finds that the Petersons have established that as a result of defendants' cover-up they were deprived of several substantial due process rights including protection from the arbitrary exercise of governmental power and equal treatment by government officials. As such, the court's January order appropriately allowed this separate Section 1983 claim to proceed despite dismissing the Petersons' denial of access to the courts Section 1983 claim. Therefore, the court shall deny moving defendants' motion as to this claim.

### 3. *Monell* Liability

In order to establish municipal liability under Section 1983, a plaintiff must show: (1) an employee violated the plaintiff's constitutional rights pursuant to an official policy or informal

6

1  practice of the municipal entity; (2) that the violator had final policy-making authority, and thus the
2  challenged action itself constituted an act of official governmental policy; or (3) a person with final
3  policy-making authority ratified the unconstitutional behavior. *Gilette v. Delmore*, 979 F.2d 1342,
4  1346 (9th Cir. 1992). The United States Supreme Court has expressly held that a municipality is not
5  liable merely because it employs a tortfeasor. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691
6  (1978).

7         In the court's underlying order, the court found that because the Petersons had sufficiently
8  established a constitutional violation under Section 1983, and because that claim "necessarily
9  involve[d] conduct by employees who allegedly had final policy-making authority . . . the Petersons
10 [had] established a claim for *Monell* liability against CCSD sufficient to survive summary
11 judgment." Doc. #254, p. 7.

12        In their motion, moving defendants argue that there is no evidence in the record that CCSD
13 employees ratified the underlying conduct supporting the Petersons' other Section 1983 claims.
14 However, viewing the evidence in the light most favorable to the Petersons as the non-moving
15 party, the court finds that there is sufficient evidence that final policy makers within the department,
16 particularly defendant Arroyo, the chief of the department, encouraged and supported defendants'
17 actions in attempting to cover-up employee conduct at the holiday party. For example, he gave
18 specific orders that were carried out throughout the department including the deletion of e-mails
19 about the holiday party and he had the final say over the decision declining to initiate an
20 investigation into employee activities at the holiday party. Therefore, the court finds that there is
21 sufficient evidence of final policy-maker involvement to allow the Peterson's *Monell* claim to
22 proceed. Accordingly, the court shall deny moving defendants motion as to this claim.

23       **B. Civil Conspiracy Claim**

24        To establish a claim for civil conspiracy, a plaintiff must establish: (1) the commission of an
25 underlying tort; and (2) an agreement between the defendants to commit that tort. *GES, Inc. v.*
26 *Corbitt*, 21 P.3d 11, 15 (Nev. 2001). In the January order, the court found that the Petersons had

proffered sufficient evidence on two underlying torts to support their civil conspiracy claim: (1) intentional destruction of evidence; and (2) intentional infliction of emotional distress. *See* Doc. #254, p. 11-12.

In their motion for reconsideration, moving defendants argue that reconsideration is warranted because neither identified tort can support a civil conspiracy claim. First, moving defendants argue that in Nevada there is no tort liability for destruction of evidence. The court has reviewed this issue and agrees with moving defendants that there is no independent tort liability for destruction of evidence. *See Timber Tech Engineered Building Products v. The Home Insurance Company*, 55 P.3d 952, 954 (Nev. 2002) (declining to recognize an independent tort for destruction of evidence). As such, the destruction of evidence cannot be considered an underlying tort to support the Petersons' civil conspiracy claim.

Second, moving defendants argue that an intentional infliction of emotional distress claim cannot support a claim for civil conspiracy in Nevada. In support of their argument, moving defendants rely solely on *Almy v. Grisham*, 639 S.E. 2d 182 (Va. 2007), a Virginia Supreme Court decision. The court has reviewed the *Almy* decision and finds that Nevada would not follow the Virginia court's holding that the tort of intentional infliction of emotional distress cannot support a civil conspiracy claim. In contrast to Virginia, where intentional infliction of emotional distress claims are "not favored in the law," *Almy*, 639 S.E. 2d at 189, such claims are allowed in Nevada. *See Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882 (Nev. 1999). Thus, the court finds that intentional infliction of emotional distress claims can support a civil conspiracy claim in Nevada and, therefore, reconsideration of this claim is not warranted.

    **C. Remaining State Law Claims**

        **1. Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) extreme or outrageous conduct by defendant; and (2) that plaintiff suffered severe emotional distress. *Beckwith*, 989 P.2d at 886. Extreme and outrageous conduct is that which is "outside all

1 possible bounds of decency" and is intolerable in civil life. *Maduike v. Agency Rent-A-Car*, 953
2 P.2d 24, 25 (Nev. 1998).

3       Moving defendants argue that the evidence in this action is insufficient to establish that they
4 engaged in any extreme or outrageous conduct simply by failing to launch an internal investigation
5 into department employees and for destroying evidence. *See* Doc. #257. However, "whether conduct
6 is extreme or outrageous is a question for the jury." *Posadas v. City of Reno*, 851 P.2d 438, 444
7 (Nev. 1993). As the Petersons have proffered sufficient evidence to raise disputed issues of fact
8 concerning moving defendants' conduct, the court did not err in denying moving defendants'
9 motion for summary judgment on this issue.

10       **2. Negligent Infliction of Emotional Distress**

11       In the January order, the court held that the Petersons could seek a negligent infliction of
12 emotional distress claim on behalf of Angela Peterson as the direct victim of moving defendants'
13 alleged negligence. *See* Doc. #254, p. 9. However, since the court's order, the court has revisited
14 this issue more thoroughly in another order in this action. *See* Doc. #272, p. 12.

15       In Nevada, a direct victim of a defendant's negligent acts can recover for emotional distress
16 caused by the defendant's negligence. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) ("If a
17 bystander can recover for the negligent infliction of emotional distress, it is only logical that the
18 direct victim be permitted the same recovery. . . We recognize that the negligent infliction of
19 emotional distress can be an element of the damage sustained by the negligent acts committed
20 directly against the victim-plaintiff."). However, the recovery for emotional distress by a direct
21 victim does not change the basic requirement that only a bystander may bring a claim for negligent
22 infliction of emotional distress. *See Pitti v. Alberstons, LLC*, 2:11-cv-0280-MMD, 2012 WL
23 1931243, at *4 (D. Nev. 2012). Instead, the *Shoen* decision, "merely held that plaintiffs pleading
24 negligence may obtain emotional distress damages just as [negligent infliction of emotional
25 distress] claimants may." *Id*. Thus, the Petersons are entitled to seek emotional damages as direct
26 victims of defendants' negligence to the extent alleged in their negligence claim. However, as they

were not bystanders to the accident that claimed the life of Angela Peterson, they may not recover under the separate cause of action for negligent infliction of emotional distress. Therefore, the court shall grant the motion for reconsideration as to this issue.

### 3  Negligent Hiring, Retention, and Supervision

To succeed on a claim for negligent hiring, retention, and supervision of employees, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

In their prior motion for summary judgment, moving defendants argued that defendant CCSD was entitled to discretionary act immunity pursuant to NRS § 41.032(2). *See* Doc. #202. NRS § 41.032(2) provides complete immunity from claims based on a political subdivision's exercise or performance of a discretionary function or duty. However, in the January order, the court found that "discretionary immunity does not extend beyond the hiring of an employee to that employee's retention and supervision," relying on *Doe v. Estes*, 926 F. Supp. 979 (D. Nev. 1996). Doc. #254, p. 9-10.

Moving defendants now argue that the court should reconsider its order because the Nevada Supreme Court has recently extended discretionary immunity to cover both the supervision and retention of an employee. *See* Doc. #257. The court agrees. In *University of Nevada Medical School of Medicine v. The Eighth Judicial Dist. Ct.*, Case no. 61058, Doc. #12-33653 (Oct. 23, 2012), 2012 Nev. Unpub. LEXIS 1460, *2 (Nev. 2012), the Nevada Supreme Court held that "supervision of employees . . . is a discretionary function entitled to immunity" under NRS § 41.032(2). Therefore, the court shall grant moving defendants' motion to reconsider on this claim.

### 4.  Ratification & Respondeat Superior

A principal may become liable for the tortious acts of its agent, if the principal, with full knowledge of the tortious conduct, ratifies that conduct, and if the conduct was "purportedly done

10

on the principal's behalf." *Harrah v. Specialty Shops*, 221 P.2d 398, 399 (Nev. 1950). Similarly, an employer may be held vicariously liable for the tortious conduct of its employees when the employees' conduct was in furtherance of their employment or within the scope of their employment. *Wood v. Safeway. Inc.*, 121 P.3d 1026, 1036 (Nev. 2005).

In the prior order, the court denied moving defendants summary judgment because the court found that "the Petersons have established that moving CCSD defendants, acting with the purpose of protecting CCSD from liability, covered up the actions of CCSD employees and attempted to prevent discovery of employee conduct at the holiday party. These actions were allegedly taken on CCSD's behalf in order to protect CCSD and its employees from possible liability." Doc. #254, p. 10. The court further held that "there is sufficient evidence that supervisory employees of the department engaged in conduct after the holiday party as part of their supervisory duties that covered up the activities of other employees who attended the party." *Id*. at p. 10-11.

Moving defendants now argue that even if the cover-up was allegedly taken on CCSD's behalf by department employees, these employees' actions were unauthorized and were not ratified because CCSD never expressly affirmed the employees' actions. However there are disputed issues of fact as to whether certain employees with final policy-making authority, like defendant Arroyo, authorized or affirmed the conduct of other department employees. Therefore, the court finds that based on these disputed issues of fact, reconsideration is not warranted.

    **5. Punitive Damages**

In the January order, the court allowed the punitive damages claims against individual employee defendants to proceed because there are disputed issues of fact concerning the individual defendants' actions and conduct. Moving defendants now argue that punitive damages should be foreclosed because defendants are officers of a political subdivision and are protected under NRS § 41.035. NRS § 41.035 provides that an award of damages against a political subdivision of the state of Nevada, like CCSD, or officers or employees of a political subdivision, may not include an award of punitive damages. NRS § 41.035(1). However, as the issue of whether the individual

defendants' conduct was within the scope of their employment is heavily disputed by the parties, the court shall not foreclose the possibility of punitive damages at this time.

IT IS THEREFORE ORDERED that moving defendants' motion for reconsideration of the court's January 10, 2014 order (Doc. #257) is GRANTED in-part and DENIED in-part in accordance with this order.

IT IS FURTHER ORDERED that summary judgment is entered in favor of defendant Brian Nebeker and against plaintiffs Linda and Francis Peterson on plaintiffs fifth cause of action for constitutional violations under 42 U.S.C. § 1983 as it relates to conduct that occurred during the holiday party.

IT IS FURTHER ORDERED that summary judgment is entered in favor of defendants Clark County School District, Filiberto Arroyo, Brian Nebeker, Loren Johnson, and Armando Quintanilla and against plaintiffs Linda and Francis Peterson on plaintiffs' seventh cause of action for negligent infliction of emotional distress.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Clark County School District and against plaintiffs Linda and Francis Peterson on plaintiffs' eighth cause of action for negligent hiring, retention, and supervision.

IT IS SO ORDERED.

DATED this 29th day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE